**Nathan Nathaniel RENDER, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 05–09–00528–CR.**

Court of Appeals of Texas,
Dallas.

July 23, 2010.

Discretionary Review Refused
Sept. 15, 2010.

---

Katherine A. Drew, Dallas County Public Defender's Office, Dallas, TX, for Appellant.

Craig Watkins, Dallas County District Attorney, Martin L. Peterson, Dallas County Assistant District Attorney, Dallas, TX, for State.

Before Justices BRIDGES, LANG, and LANG–MIERS.

## OPINION

Opinion By Justice LANG.

This case is now before us on the State's motion to publish and Appellant's petition for discretionary review to the Court of Criminal Appeals. Pursuant to rules 47.2(b) and 50 of the Texas Rules of Appellate Procedure, we withdraw our opinion on March 19, 2010. This is now the opinion of the Court.

Following a plea of not guilty, appellant Nathan Nathaniel Render was convicted by a jury of continuous sexual abuse against a child younger than fourteen years of age during a period of at least thirty days. TEX. PENAL CODE ANN. § 21.02 (Vernon Supp.2009). Punishment was assessed by the jury at forty-six years' confinement. On appeal, appellant raises six issues: (1) the trial court erred by omitting a "not guilty" verdict form; (2) the trial court abused its discretion by responding to a jury note with testimony regarding the first incident of abuse without supplying the chronological context; (3), (4), and (5) the statute under which appellant was charged and convicted vio-

lates the unanimity requirement, due process, and due course of law; and (6) the evidence is factually insufficient to sustain appellant's conviction. We decide appellant's issues against him. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The indictment in this case charged in relevant part that appellant committed two or more acts of sexual abuse against D.R., a child younger than fourteen years old. Complainant, ten years old at the time of trial, testified she lived in an apartment with her mother, brother, sister, and appellant, her stepfather. Complainant testified that while she was in the third grade, the "incidents" occurred with her stepfather. The first incident occurred around August of 2007. At eight o'clock one evening, complainant went to her bedroom to go to sleep. She shared her bedroom with her sister. Later that night, appellant awakened complainant and carried her to a chair in the living room. Appellant took off complainant's shorts and pulled out his "private part." Complainant saw appellant put his "middle part" into her "middle part." Complainant was crying, and appellant told her to stop crying. When complainant cried louder, appellant stopped and sent complainant back to her room. The next day, complainant did not inform anyone about what happened because she was scared appellant would repeat the actions.

At the end of 2007, around the Christmas holiday, the second incident occurred. Appellant came into complainant's room while she was sleeping and carried her to the same living room chair and he "did it again." When complainant cried, appellant ordered her to stop crying. Complainant recalled a third incident occurred

on a Friday after Christmas. Appellant repeated the same conduct.

The final incident recounted by complainant was in April of 2008. Appellant repeated the same conduct and made complainant touch his "middle part" with her hand and move her hand. When asked if complainant noticed anything strange about this time, complainant recalled her underwear "felt kind of wet." When she went to bed, complainant took her underwear off, but changed back into them in the morning. The day after the final incident, April 27, 2008, complainant was watching television with her mother and brother when a Viagra commercial came on. The children giggled, and complainant's mother told her children if they ever needed to talk about anything, they could come to her. Complainant started crying and told her mother that appellant had "hurt her." Her mother called the police. Complainant was taken to the hospital for an examination. Her clothes and underwear were confiscated. Melissa Hass, a forensic scientist, analyzed a semen stain on complainant's underwear she was wearing during the final incident. Hass concluded that the specimen found on the complainant's underwear belonged to appellant.

Jennifer Goldberg, previously a forensic interviewer at Dallas Children's Advocacy Center, testified complainant made an outcry of abuse during an interview with her. Complainant communicated to Goldberg in writing that "her dad put his penis in her middle." Kim Davies, a nurse practitioner, examined complainant on the day the abuse was reported. During the exam, complainant informed Davies that "he stuck his private part in her front part, not all the way in." Davies reported that complainant had a normal genital exam, in that there were no lacerations or bleeding, but

that this does not confirm or rule out sexual abuse.

Detective Jonathan Hay interviewed appellant after appellant was arrested. During the first three hours of the interview, appellant continuously denied committing sexual assault against his stepdaughter. After Detective Hay mentioned that complainant stated the abuse happened on more than one occasion, appellant "made a comment or statement that it didn't happen, you know, many, many times, like what myself and Detective White were saying or implying. Later on into the interrogations he acknowledged, "well, it occurred on one specific date and it would have been that Saturday night, April 26, 2008 . . . And that it involved touching, in the form of his finger to her vagina."

Appellant was initially charged with indecency with a child. After complainant was interviewed and the investigation was complete, the charges were changed to continuous sexual abuse against a child. The jury found appellant guilty. Following the jury's assessment of forty-six years' confinement and appellant's sentencing, appellant filed this appeal.

## II. OMISSION OF "NOT GUILTY" FORM

In his first issue, appellant contends the trial court erred by omitting a "not guilty" verdict form and appellant suffered egregious harm as a result of this omission.[1] The verdict form attached to the charge included alternatives for the jury to find appellant guilty of continuous sexual abuse and aggravated sexual assault of a child. It did not include a form for finding appellant not guilty. The State responds that any harm that appellant may have suffered

was merely theoretical and does not constitute egregious harm.

### A. Applicable Law & Standard of Review

In *Jennings*, the court of criminal appeals held that all jury charge errors, including errors or omissions in the verdict form, are cognizable on appeal despite a lack of objection in trial court. *Jennings v. State*, 302 S.W.3d 306, 311 (Tex.Crim. App.2010). In *Jennings*, the appellant was charged with burglary of a habitation with intent to commit aggravated assault. The court provided the jury with three verdict forms: (1) guilty of burglary of a habitation with intent to commit aggravated assault, (2) not guilty of burglary of a habitation with intent to commit aggravated assault, and (3) guilty of a lesser-included offense, burglary of a habitation with intent to commit assault. *Id.* at 308. There was no verdict form providing for acquittal of the lesser-included offense, and there was no objection to the omission. *Id.* The jury found the appellant guilty of the lesser-included offense, burglary of a habitation with intent to commit assault. On appeal, the Amarillo Court of Appeals held that the appellant waived any objection to the omission of the verdict form because of the failure to object at trial. *Id.* at 310–11. The Texas Court of Criminal Appeals reversed. After finding that the verdict forms are part of the jury charge, the court remanded to the appellate court for analysis of the asserted errors in the verdict form under the *Almanza* standard. *Id.* at 311; *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (op. on reh'g).

In *Jennings*, the court stated that when verdict forms are attached to a jury

---

1. Due to the recent Texas Court of Criminal Appeals decision issued in *Jennings v. State,* 302 S.W.3d 306 (Tex.Crim.App.2010), both parties provided supplemental briefs addressing the *Jennings* holding.

charge, "it must set out every 'guilty' or 'not guilty' option that is available to the jury." *Jennings,* 302 S.W.3d at 310 (citing *Williams v. State,* 24 Tex.App. 637, 7 S.W. 333, 336 (1888)). While the *Jennings* court noted that *Williams* is "still Texas law," we must nevertheless apply the standard set forth in *Almanza* to determine whether the harm is so egregious to warrant reversal.

■ Under *Almanza,* the degree of harm necessary for reversal depends on whether the appellant preserved the error by objection. *Almanza,* 686 S.W.2d at 171; *see* TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon Supp.2009); *Ngo v. State,* 175 S.W.3d 738, 743 (Tex.Crim.App.2005). Error in the charge, if timely objected to in the trial court, requires reversal if the error was "calculated to injure the rights of defendant." *See* TEX.CODE CRIM. PROC. ANN. art. 36.19. This means that if the charge contains error and the error has been properly preserved by objection, reversal is mandated as long as the error is not harmless. *Almanza,* 686 S.W.2d at 171. However, if no objection was made at trial to the jury charge, reversal is proper only if the error is so egregious and created such harm that it might be fairly said the defendant did not have a fair and impartial trial. *Id.*

■ In determining whether harm resulted from the trial court's omission of the not guilty verdict form, we must determine (1) the actual harm in light of the entire jury charge, (2) the state of the evidence, including contested issues and weight of probative evidence, (3) the argument of counsel, and (4) any other relevant information revealed by the record. *Ngo,* 175 S.W.3d at 750 (citing *Almanza,* 686 S.W.2d at 171).

### B. Application of Law to Facts

■ In this case, appellant did not object to the jury charge at the trial court. As such, we analyze the factors set forth in *Almanza* to determine whether any harm suffered by appellant constituted egregious harm. *Jennings,* 302 S.W.3d at 311.

### 1. Jury Charge

■ Appellant argues that when a trial court provides verdict forms to the jury, it must supply all proper verdict forms or it conveys an impression to the jury that appellant was guilty of some crime. The State responds that other jury instructions clearly informed the jury that they should find appellant not guilty if the State failed to meet its burden of proof.

The charge submitted to the jury consisted of seven pages, with the last two pages being verdict forms. The jury charge described the elements required to convict appellant of continuous sexual abuse of a child and aggravated sexual assault of a child. The jury was instructed if it had a reasonable doubt that defendant committed continuous sexual abuse, it must acquit appellant of the offense and proceed to consider the lesser included offense of aggravated sexual assault of a child. The jury was then instructed if it had a reasonable doubt as to the appellant's guilt to the lesser-included offense, the jury must find appellant "not guilty." On the next page, the charge repeated, "In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict, 'not guilty.'"

Further, the charge stated, "After you have arrived at your verdict, you *may* use one of the forms attached hereto." (emphasis added). One verdict form allowed for conviction of continuous sexual abuse while the other allowed for conviction of aggra-

vated sexual assault. Even though there was no verdict form for acquittal, viewing the charge as a whole, the jury charge sufficiently informed the jury of the option to find appellant not guilty if the State failed to meet its burden of proof. Therefore, the jury charge does not weigh in favor of egregious harm.

### 2. State of the Evidence

■ Appellant contends that harm is evident because the State's evidence was fiercely contested, as addressed in his sixth issue on appeal, and "it cannot be said that a not guilty verdict was impossible." As we discuss in the sixth issue on appeal, the evidence is factually sufficient to convict appellant of continuous sexual abuse. Complainant testified appellant had sexual intercourse with her on more than one occasion. Moreover, the record shows appellant's sperm was on complainant's underwear. If the jury believed this evidence to be true beyond a reasonable doubt, they were required to find appellant guilty of continuous sexual abuse. The state of the evidence does not weigh in favor of egregious harm.

### 3. Counsel's Argument

■ During trial, counsel for appellant argued that the State did not meet its burden to prove continuous sexual abuse because there was reasonable doubt that the dates of the abuse were within the statutory time period. Counsel agreed that some inappropriate conduct occurred during April of 2008, the time of the last incident, but argued there was reasonable doubt as to whether another incident of sexual assault occurred prior to April of 2008 and after September 1, 2007, when the statute became effective. Counsel assailed complainant's credibility arguing her testimony, that the two sexual assaults occurred around Christmas time,

was unreliable because complainant was confusing the dates. During closing, counsel argued, "If you're not sure that the act happened at Christmas, happened when [complainant] said it happened, or did it happen at all, you can't find [appellant] guilty of continuous sexual abuse. You only have one act of aggravated sexual assault." Thus, counsel argued that the jury could, at most, find appellant guilty of aggravated sexual assault, but that if it had a reasonable doubt, it should find appellant not guilty. Because counsel urged the jury to find appellant either guilty of the lesser-included offense or not guilty, and the jury returned with a guilty verdict for the higher offense, counsel's argument weighs in favor of egregious harm.

### 4. Other Considerations—Jury Notes

Appellant notes that the multiple jury notes establish that the jury truly struggled in reaching its guilty verdict and the jury was "provided with no avenue by which to acquit Appellant." The State disagrees and argues that the notes only reflect the jury may have had difficulty in determining of which offense appellant was guilty.

The record contains four jury notes. In the first note, the jury questioned the timing of one of the incidents of sexual assault. The first note stated, "When [complainant] identified the middle parts on the diagram . . . was this identification and her statement that middle part touched middle part referring to the time after Dec. 25th, when the Christmas tree was still up . . . [?]" The second note requested a copy of complainant's testimony because the jury disagreed about whether there was more than one incident of "sexual organ to sexual organ contact." The third note stated that the jury was in dispute about the number of times there was "sexual organ to sexual organ" contact "with regard to

the alleged incidents 1 & 2 (Dec. to Jan. time frame)." The fourth note states that the jury was in dispute about the complainant's testimony regarding two incidents when appellant's "middle part" touched complainant's "middle part."

In order to convict of continuous sexual abuse, the jury was required to find that appellant committed two or more sexual assaults during a period of at least thirty days. In each note, the jury presupposes an incident of sexual assault. From the questions framed by the jury, the logical conclusion is that the jury struggled with determining how many incidents of sexual assault occurred, not whether any sexual assaults took place. Thus, the notes appear to show that the jury struggled in deciding whether appellant was guilty of continuous sexual abuse or· aggravated sexual assault, not whether appellant was guilty or not guilty of all offenses. The jury did not appear to consider acquittal as an alternative, as evidenced by the jury rendering a guilty verdict for continuous sexual abuse, and not convicting appellant of the lesser-included offense, as in the *Jennings* case. The fact that the jury convicted appellant of the greater offense supports the conclusion that appellant was not egregiously harmed by the omission of a not guilty verdict form.

After analyzing the factors set forth in *Almanza*, we cannot conclude that appellant was egregiously harmed by any error in the verdict forms. *See Almanza*, 686 S.W.2d at 171. We decide against appellant as to his first issue.

### III. RESPONSE TO JURY NOTE

In his second issue, appellant contends the trial court abused its discretion by responding to a jury note with testimony regarding the first incident of abuse without supplying the chronological context. The State responds that no further in-struction about the first incident was required by the request from the jury.

### A. Applicable Law & Standard of Review

■ Article 36.28 of the Texas Code of Criminal Procedure provides that, where the jury disagrees as to a witness's statement, it may, upon applying to the court, have read to them from the court reporter's notes that part of a witness's testimony or the particular point in dispute. TEX.CODE CRIM. PROC. ANN. art. 36.28 (Vernon Supp.2009). When the jury asks that certain testimony be reread, the trial court must first determine if the request is proper under article 36.28. *Howell v. State*, 175 S.W.3d 786, 790 (Tex.Crim.App. 2005) (citing *Moore v. State*, 874 S.W.2d 671, 673 (Tex.Crim.App.1994)). A request for testimony is proper under article 36.28 if it reflects that the jurors disagree about a specified part of testimony. *Id.* If the request is proper, the trial court must interpret the communication, decide which sections of the testimony will best answer the inquiry, and then limit the rereading accordingly. *Brown v. State*, 870 S.W.2d 53, 55 (Tex.Crim.App.1994). The trial court's decision will not be disturbed unless a clear abuse of discretion and harm are shown. *Id.; see also Howell*, 175 S.W.3d at 790. A trial court abuses its discretion when its decision is so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *Howell*, 175 S.W.3d at 790.

### B. Application of Law to Facts

■ During jury deliberations, the jury sent out four notes. Only the fourth note received a substantive response from the trial court. The fourth jury note stated:

The jury disagrees/disputes as to the statements of the witnesses, [complainant]. 'His middle part touched my mid-

dle part' on the incident during the time when the tree was still up, but presents gone. 'His middle part touched my middle part' on the incident during the fall when she received her school packet. The trial court responded to the jury note by providing pages 30 and 42 from volume 3 of the reporter's record, which corresponded to the two incidents the jury was in disagreement about. Appellant objected to the trial court's response to the jury dispute about the "incident during the fall." Appellant argued that the submission of page 30, without chronological context, allowed the jury to improperly convict based on that incident of abuse.[2] The trial court overruled the objection noting it had already provided the jurors with appropriate instructions.

We cannot conclude the trial court abused its discretion by refusing to supply a chronology with its response. The trial court had already instructed the jury concerning the purpose for which the evidence of that specific incident was to be considered and that it could not be considered for any other purpose. The jury instructions stated, "in order to find the defendant guilty of the offense of Continuous Sexual Abuse of a Young Child, you must agree unanimously that the defendant, during a period that is 30 days or more in duration *beginning on or after September 1, 2007*, committed two or more acts of sexual abuse." The jury had also been advised that the defendant was "on trial solely on the charges contained in the indictment," and that "any evidence ... showing that Defendant committed an ex-

traneous crime, wrong, or act" could be considered "for the limited purpose of showing the Defendant's intent, the state of mind of the defendant and [the complainant] ... and the previous and subsequent relationship between the said Defendant and [the complainant]." As the State points out, the note from the jury did not express any disagreement about *when* the incidents of abuse occurred, but only *how* the abuse had occurred or how many times. The jury was entitled to hear again only the "part of such witness testimony or the particular point in dispute, *and no other.*" See TEX.CODE CRIM. PROC. ANN. art. 36.28 (emphasis added). Appellant's second issue is decided against him.

## IV. CONSTITUTIONALITY OF STATUTE

In his third, fourth, and fifth issues, appellant contends section 21.02 of the Texas Penal Code is unconstitutional under both the United States and Texas Constitutions because it eliminates the requirement of unanimity. First, he argues section 21.02 is unconstitutional because it violates the unanimity clause set forth in article V, section 13 of the Texas Constitution, which requires a unanimous jury verdict in all felony cases (issue three). Second, he argues the statute violates the Due Process Clause set forth in the Fifth and Fourteenth Amendments to the United States Constitution (issue four) and the Due Course of Law Clause set forth in article I, section 19 of the Texas Constitution (issue five) because a jury need not be unanimous as required by the federal and

---

**2.** The testimony contained on page 30 from volume 3 of the reporter's record refers to the complainant's testimony about an incident of sexual abuse apparently occurring prior to September 1, 2007. The bill enacting section 21.02 of the penal code provided this new provision applied only to conduct occurring on or after September 1, 2007. *See* TEX. PENAL

CODE ANN. § 21.02. The State agreed it would not ask for a conviction based upon this incident. However, the trial court allowed the State to argue pursuant to article 38.37 that this evidence was relevant to the relationship between appellant and complainant as well as state of mind. *See* TEX.CODE CRIM. PROC. ANN. art. 38.37 (Vernon Supp.2009).

state constitutions. The State responds section 21.02 is constitutional because it defines the offense in such a way that the jury need not be unanimous as to any particular act or omission because they are but the means by which the offense may be committed.

### A. Standard of Review

The constitutionality of a criminal statute is a question of law which we review de novo. *Owens v. State,* 19 S.W.3d 480, 483 (Tex.App.-Amarillo 2000, no pet.); *State v. Salinas,* 982 S.W.2d 9, 10–11 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd). When reviewing the constitutionality of a statute, we presume the statute is valid and the legislature has not acted unreasonably or arbitrarily in enacting the statute. *Rodriguez v. State,* 93 S.W.3d 60, 69 (Tex.Crim.App.2002); *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex. Crim.App.1978). The burden rests on the party challenging the statute to establish its unconstitutionality. *Rodriguez,* 93 S.W.3d at 69. We are obliged to uphold a statute if we determine a reasonable construction which will render it constitutional. *See Ely v. State,* 582 S.W.2d 416, 419 (Tex.Crim.App.1979).

### B. Application of Law to Facts

Appellant was charged with violating section 21.02 of the Texas Penal Code. The trial court overruled appellant's motion challenging section 21.02 as unconstitutional.

Section 21.02 provides in pertinent part:

(b) A person commits an offense if:

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

. . . .

(d) If a jury is the trier of fact, *members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed.* The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

TEX. PENAL CODE ANN. § 21.02 (emphasis added). Accordingly, the jury was instructed it need only unanimously agree that appellant, during a period of thirty days or more beginning on or after September 1, 2007, committed two or more acts of sexual abuse. There are no reported cases ruling on the constitutionality of section 21.02.

Appellant argues section 21.02(d) violates unanimity "because, on its face, it dispenses with requiring unanimity upon each essential element of the crime." Appellant cites *Ngo,* 175 S.W.3d at 745, for the proposition that the Texas Constitution requires jury unanimity regarding each statutory element, and he argues section 21.02(d) is unconstitutional because "the jury does not have to agree on the underlying essential elements, the specific acts, the specific *actus reus,* that violates the statute." We disagree.

In *Ngo,* the defendant was charged with credit card abuse under section 32.31 of the Texas Penal Code with three separate offenses: (1) stealing a credit card; (2) receiving a credit card known to be stolen with the intent to use it; and (3) presenting a credit card to obtain a fraudulent benefit without the effective consent of the

cardholder. *Ngo,* 175 S.W.3d at 740. Section 32.31 lists eleven different ways to commit credit card abuse. TEX. PENAL CODE ANN. § 32.31 (Vernon Supp.2009). The State sought one conviction for the commission of one credit card abuse offense by proving any one of the three criminal acts, which occurred at different times in different ways. *Ngo,* 175 S.W.3d at 744. The court of criminal appeals held that "the failure to instruct the jury that it must be unanimous on which specific criminal act the defendant committed violated the defendant's state constitutional and statutory right to a unanimous jury verdict." *Id.* at 752. However, that court also held the jury need not agree on all the "underlying brute facts [that] make up a particular element." *Id.* at 747 (citing *Richardson v. United States,* 526 U.S. 813, 815, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999)).

This case is distinguishable from *Ngo.* In *Ngo,* the State sought one conviction for credit card abuse with evidence that at different times the defendant committed three different acts that the applicable statute defined as separate criminal offenses and not as means of committing a single criminal offense. *See Ngo,* 175 S.W.3d at 745. The applicable statute in *Ngo* defined the three acts involved as separate criminal offenses while the applicable statute here defines the two or more acts involved as means of committing a single criminal offense. *See Jefferson v. State,* 189 S.W.3d 305, 312–13 (Tex.Crim. App.2006) (injury could be caused in any of multiple ways and jury does not have to unanimously agree as to any particular act or omission); *see also Landrian v. State,* 268 S.W.3d 532, 535 (Tex.Crim.App.2008) ("The Legislature has considerable discretion in defining crimes and the manner in which those crimes can be committed"). In this case, the State sought one conviction for a "series" of acts of sexual abuse

with evidence that, during the relevant time period, appellant committed two or more different acts that section 21.02 defines as means of committing a single criminal offense and not as two or more separate criminal offenses. Accordingly, unlike in *Ngo,* this statute does not violate any constitutional requirements raised by appellant.

Appellant also relies on *Richardson v. United States,* 526 U.S. 813, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) for the proposition that individual specific acts comprising the continuous series of an offense are each separate elements of the crime that must be agreed upon unanimously by the jury. We conclude that *Richardson* is distinguishable from this case. In *Richardson,* the appellant was convicted under a federal criminal statute forbidding any person from engaging in a "continuing criminal enterprise." *Richardson,* 526 U.S. at 815, 119 S.Ct. 1707. A person is engaged in a "continuing criminal enterprise" if he "violates any provision of [the federal drug laws]" and "such violation is a part of a continuing series of violations...." *Id.* The Supreme Court held that for this particular federal crime, a jury must unanimously agree not only that the defendant committed some "continuing series of violations," but also about which specific "violations" make up that "continuing series." *Id.* at 813, 119 S.Ct. 1707. The Supreme Court stated, "if the statute makes each 'violation' a separate element, then the jury must agree unanimously about which three crimes the defendant committed." However, "[i]f the statute creates a single element, a 'series,' in respect to which individual violations are but the means, then the jury need only agree that the defendant committed at least three of all the underlying crimes the Government has tried to prove. The jury need not agree about which three." In

this case, section 21.02 of the Texas Penal Code is a statute that creates a single element of a "series" of sexual abuse. It does not make each "violation" (act of sexual abuse) a separate element of the offense that needs to be agreed upon unanimously, like in *Richardson.*

Further, appellant contends section 21.02 violates due process and due course of law because it conflicts with the requirement of fundamental fairness. Citing *Schad v. Arizona,* 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), appellant argues "the statute allows for conviction with no jury agreement as to what acts were allegedly committed and/or when the act allegedly took place." In *Schad,* the Supreme Court held that a state can permit a jury to return a general verdict of guilty without agreeing that the defendant had committed either premeditated murder or felony murder. Appellant cites Justice Scalia's concurring opinion in *Schad,* which distinguished between two scenarios. The first involves "novel 'umbrella' crimes (a felony consisting of either robbery or failure to file a tax return) where permitting a 6–to–6 verdict would seem contrary to due process...." The second is "when a woman's charred body has been found in a burned house, and there is ample evidence that the defendant set out to kill her, it would be absurd to set him free because six jurors believe he strangled her to death (and caused the fire accidentally in his hasty escape), while six others believe he left her unconscious and set the fire to kill her." *Id.* at 650, 111 S.Ct. 2491 (Scalia, J., concurring). It is appellant's position that the offense of continuous sexual abuse was an aggregation of individual crimes of sexual abuse, which was equivalent to a "novel umbrella crime." Because some jurors were allowed to convict based upon sexual abuse on some days and other jurors could convict based on sexual abuse on other days, appellant argued this scenario violated due process. We are unpersuaded by appellant's argument.

In *Schad,* the record reflected the trial court did not require the jury to unanimously agree as to the theory of murder for which petitioner was convicted. *Id.* at 632, 111 S.Ct. 2491. The Supreme Court upheld the trial court's decision, stating, "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Id.* (citing *McKoy v. North Carolina,* 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (Blackmun, J., concurring)).

Appellant's third, fourth, and fifth issues are decided against him.

## V.  FACTUAL SUFFICIENCY OF THE EVIDENCE

In his sixth issue, appellant contends the evidence is factually insufficient to sustain appellant's conviction because the evidence is too weak to support the finding that he committed at least two acts of sexual abuse during a period of at least thirty days. The State responds the evidence, giving due deference to the credibility determinations made by the jury, is not too weak to support the verdict.

### A.  Standard of Review

In a factual sufficiency review, an appellate court views all of the evidence in a neutral light to determine whether the jury's verdict of guilt was rationally justified. *See Lancon v. State,* 253 S.W.3d 699, 705 (Tex.Crim.App.2008); *Watson v. State,* 204 S.W.3d 404, 415 (Tex.Crim.App.2006). Evidence that is legally sufficient to support a verdict of guilt may still be factually insufficient when the verdict seems clearly

wrong or manifestly unjust, or it is against the great weight and preponderance of the evidence. *See Berry v. State*, 233 S.W.3d 847, 854 (Tex.Crim.App.2007); *Rollerson v. State*, 227 S.W.3d 718, 724 (Tex.Crim.App. 2007); *Watson*, 204 S.W.3d at 417. When conducting a factual sufficiency review, an appellate court considers all of the evidence, both direct and circumstantial, whether properly or improperly admitted. *See Berry*, 233 S.W.3d at 854; *see also King v. State*, 29 S.W.3d 556, 565 (Tex. Crim.App.2000); *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex.Crim.App.1999). Also, an appellate court gives due deference to the findings of the fact-finder, but the appellate court may substitute its judgment for the jury's credibility and weight determinations to a very limited degree. *See Watson*, 204 S.W.3d at 416–17; *see also Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim.App.2000) (factual sufficiency review requires reviewing court to afford "due deference" to jury's determinations); *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim.App.1996) (factual sufficiency review requires "deferential standards of review applied" to jury verdicts). However, the existence of contrary evidence is not enough to support a finding of factual insufficiency. *See Goodman v. State*, 66 S.W.3d 283, 287 (Tex.Crim.App.2001); *Lee v. State*, 186 S.W.3d 649, 655 (Tex.App.-Dallas 2006, pet. ref'd). An appellate court cannot declare a conflict in the evidence justifies a new trial simply because it disagrees with the jury's resolution of that conflict. *See Watson*, 204 S.W.3d at 417. An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge. *Lancon*, 253 S.W.3d at 706.

Reversal for factual insufficiency occurs only when: (1) the evidence supporting the verdict is so weak the verdict seems clearly wrong and manifestly unjust; or (2) there is some objective basis in the record that shows the great weight and preponderance of the evidence contradicts the jury's verdict. *See Berry*, 233 S.W.3d at 854; *Watson*, 204 S.W.3d at 417; *see also Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim.App.2002); *Johnson*, 23 S.W.3d at 11; *Clewis*, 922 S.W.2d at 129. A clearly wrong and unjust verdict occurs when the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Berry*, 233 S.W.3d at 854.

### B. Applicable Law

A person commits the offense of continuous sexual abuse against a child if: "(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age." TEX. PENAL CODE ANN. § 21.02. Thus, to convict the appellant of this offense, the jury must have found that appellant committed at least two acts of sexual abuse over a period of at least thirty days.

### C. Application of Law to Facts

■ Appellant claims that his conviction rests upon factually insufficient evidence and represents a manifest injustice. Viewing the evidence in a neutral light, the record shows complainant, who was ten years old at the time of trial, testified appellant had sexual intercourse with her on more than one occasion. At least two of the assaults occurred after the effective date of the statute, September 1, 2007. There was at least one incident around Christmas time, and the final time was the

day before she disclosed the assault in April 2008. Complainant provided explicit details about the sexual assaults and the location where the assaults occurred. The record indicates that complainant disclosed the assaults to three witnesses: her mother, a nurse, and a forensic interviewer at the Dallas Children's Advocacy Center. Further, appellant's sperm was found on the complainant's underwear she was wearing during the final assault. Finally, the record contains Detective Hay's testimony that appellant admitted in an interview he inappropriately touched complainant.

Appellant claims the following contrary evidence established the evidence is factually insufficient to support his conviction: (1) there was no evidence of bruising or other physical injury to the complainant, (2) no one else present in the household observed or heard anything suspicious during the times the assault occurred, and (3) there was no evidence that appellant's semen was on the chair where the assaults took place. However, this evidence appellant relies upon to support his factual sufficiency challenge relates to the credibility of the witnesses. Because the jury is the sole judge of a witness's credibility and weight to be given the testimony, the jury may believe or disbelieve the contrary testimony. We must afford due deference to the jury's determination. *See Johnson,* 23 S.W.3d at 9. We conclude the evidence supporting the verdict is not so weak that the verdict seems clearly wrong and manifestly unjust. Issue six is decided against appellant.

## VI. CONCLUSION

We decide appellant's six issues against him. The trial court's judgment is affirmed.