**Modified and Affirmed and Opinion Filed September 9, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00811-CR**
**No. 05-20-00812-CR**

**JORGE GARCIA OLGUIN, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-82189-2020, Counts I and II**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Smith
Opinion by Justice Osborne

After a bench trial, the trial court found appellant Jorge Garcia Olguin guilty

of continuous sexual abuse of a child (Count I) and indecency with a child by sexual

contact (Count II). TEX. PENAL CODE §§ 21.02, 21.11(a)(1). The trial court sentenced

appellant to thirty years' imprisonment on Count I and ten years' imprisonment on

Count II, to run concurrently. In two issues, appellant challenges the sufficiency of

the evidence to support his convictions and contends the amended indictment failed

to give him adequate specificity of the number of offenses charged. We modify the

trial court's judgment for each Count to reflect appellant's pleas of "not guilty." We affirm the trial court's judgments as modified.

## BACKGROUND

Appellant and Diana Letitcia ("Lety") Estrada met in 2003 and were married some years later. They lived together in Collin County, and from time to time, extended family lived with them in their home.

Lety had children from previous relationships, including her daughters Diana and Jessica, who had children of their own. Jessica's daughter D.V. and Diana's daughters C.F. and B.O. either lived with appellant and Lety for periods of time or were frequent visitors to appellant and Lety's home. C.F. was born on January 12, 2001, B.O. was born on September 15, 2006, and D.V. was born on May 18, 2009. The children loved appellant and considered him as their grandfather.

C.F. and B.O. are both Diana's children, but they have different fathers. Appellant and C.F. were especially close because C.F.'s father was not a part of her life. Appellant bought C.F. special gifts and spent time with her when B.O. and another sister were visiting their father.

Appellant and Lety's marriage eventually soured and they separated permanently in October 2015 after Lety became aware of appellant's infidelity. Witnesses testified that Lety was very angry at appellant, as Lety confirmed in her own testimony. Among other matters, Lety admitted sending appellant angry text messages, three of which were admitted as exhibits at trial.

–2–

Some years later, D.V. told a school friend that appellant had abused her. The friend told her parent, who alerted school authorities. In March 2019, C.F.'s, B.O.'s, and D.V.'s parents were notified that their daughters had made outcries of sexual abuse occurring before appellant and Lety's separation in October 2015. The children were interviewed at Collin County Children's Advocacy Center, and appellant was subsequently arrested and charged by indictment with one count of continuous sexual abuse of a young child and one count of indecency with a child, sexual contact. Appellant pleaded not guilty to all charges, waived a jury for both stages of the trial, and proceeded to trial by video conference. After hearing testimony from nine witnesses, including C.F., B.O., D.V., and appellant, the trial court found appellant guilty on both counts. In the punishment phase of the trial, appellant again testified, as did seven other witnesses who testified to appellant's good character. The trial court sentenced appellant and rendered judgment. This appeal followed.

## DISCUSSION

### 1. Sufficiency of the evidence

In his first issue, appellant challenges the sufficiency of the evidence to support his conviction for continuous sexual abuse of a child (Count I) and his conviction for indecency with a child by sexual contact (Count II). He argues that the trial court erred by finding that the State proved all of the elements of the offenses beyond a reasonable doubt.

In determining whether the evidence is sufficient to support a criminal conviction, we apply well-established standards. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We view the evidence in the light most favorable to the verdict and determine whether a rational factfinder could have found all the elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899. When there is conflicting evidence, we presume the factfinder resolved those conflicts in favor of the verdict and defer to that resolution as long as it is supported by the evidence. *Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also defer to the factfinder's determinations of witness credibility and the weight to be given their testimony. *Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899.

**A. Continuous sexual abuse of a young child, Count I**

A person commits the offense of continuous sexual abuse of a young child "if, (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse,[1] regardless of whether the acts of sexual abuse are committed against one or more victims; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim

---

[1] "Act of sexual abuse" is defined in penal code section 21.02(c) as "any act that is a violation of one or more" of specific penal laws. The offenses specified in subsections 21.02(c)(1) through (7) include indecency with a child under § 21.11(a)(1), sexual assault under § 22.011, and aggravated sexual assault under § 22.021. TEX. PENAL CODE § 21.02(c).

is: (A) a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense . . . ." TEX. PENAL CODE § 21.02(b). Although the exact dates of the abuse need not be proven, the State must prove that two or more acts of sexual abuse occurred during a period of 30 days or more. *Baez v. State*, 486 S.W.3d 592, 595 (Tex. App.—San Antonio 2015, pet. ref'd); *see also* TEX. PENAL CODE ANN. § 21.02(b). The testimony of the child victim alone is sufficient to support a conviction for continuous sexual abuse of a young child. TEX. CODE CRIM. PROC. art. 38.07.

Appellant contends the evidence is insufficient to support his conviction for continuous sexual abuse of a child because the State failed to establish that he committed two or more acts of sexual abuse over a period of 30 or more days. He argues that C.F., B.O., and D.V. testified to "possibly hundreds of incidents between January 12, 2010 and January 11, 2015" and the State merely "argued that within this period there had to be 30 days in there somewhere." He contends that the State's "logic was that as long as the family lived together and there were opportunities" the statutory requirements were met, but references to birthdays, other events, or puberty were too uncertain and vague to constitute proof beyond a reasonable doubt.

Appellant argues the evidence shows he worked long hours and was separated from Lety and not living in the home on five occasions, one of which extended for four months. He contends all of the victims testified they loved him and counted on

him to fulfill parental duties because their parents were working or absent. He further argues:

- Although allegations were made that some acts of sexual misconduct occurred "in various automobiles in broad daylight," there were no photos of the automobiles or proof that these instances occurred in Collin County;

- There was no evidence that anyone "even suspected that this was going on, much less with three victims right under their noses";

- Appellant and other witnesses testified to "the good things he did for the family";

- Appellant offered an alternative theory, that because of his infidelity to Lety and given Lety's anger and threats, all of the witnesses lied out of loyalty to Lety; and

- If he were guilty, he would not have appeared at the police station; he "would have absconded to Mexico," where he was born.

Appellant concludes that the witnesses' "delayed, uncorroborated testimony" did not satisfy the State's burden to prove his guilt beyond a reasonable doubt, especially because allegations of sexual abuse of children "are virtually indefensible."

As to C.F., Count I of the indictment alleged appellant committed two or more acts of sexual abuse by aggravated sexual assault of a child ("intentionally and knowingly caus[ing] the female sexual organ of [C.F.], a child then younger than fourteen (14) years of age, to contact the male sexual organ of the defendant") and/or indecency with a child by sexual contact ("intentionally and knowingly, with the intent to arouse or gratify the sexual desire of any person, engag[ing] in sexual contact by touching part of the genitals of [C.F.], a child younger than seventeen

(17) years of age, by means of the defendant's hand"). *See* TEX. PENAL CODE § 21.02(b), (c).

C.F. was nineteen years old at the time of trial. She testified that Lety began dating appellant when C.F. was two or three years old. C.F. and appellant became close, and appellant became both a father and grandfather figure to C.F.

In 2010, when C.F. was in the third grade, she and her mother and sisters moved in with Lety and appellant in their home in Plano. Around the same time, when C.F. was nine years old and in the third or fourth grade, appellant started touching her inappropriately and sexually abusing her. Later, although C.F. and her family had moved out of appellant and Lety's home, C.F. went there every day after school while her mother was at work and her younger siblings were in day care, and the abuse continued. C.F. testified that she and appellant spent a lot of one-on-one time together.

C.F. gave detailed testimony about the first time appellant sexually abused her in his SUV in an empty parking lot. On Appellant's instructions, C.F. climbed into, and reclined, a second row seat. Appellant followed and "hovered over [her] body so he was on top of [her]" and pushed down both of their pants. Appellant inserted his penis into her vagina and started having sex with her. His body and penis were moving at the same time, and he was "thrusting" towards her. His breathing got "more rough and almost like a moan or a groan." He nibbled her ear. It did not last too long. She had no idea what was going on, and she did not know it was wrong at

the time. Appellant told her not to tell anyone. She testified that she did not tell anyone "because I loved him and I didn't want to see him get in trouble."

C.F. testified that the abuse continued, mostly in Lety and appellant's bedroom when no one else was home, but also in the front living room. C.F. testified that the abuse occurred "multiple times a week." In the bedroom, appellant would bend her over the edge of the bed face down with her waist up and her feet off the bed. Appellant would be behind her. More than one time, appellant's penis contacted her vagina. More than one time, appellant's hands or fingers contacted her vagina. C.F. testified that appellant's "breathing was very hard and heavy" and he would "do a lot of grunts and moans." He would ejaculate but not inside of her. He would either use a white towel he kept near the bed, or he would go to the restroom and clean up. In the living room, appellant would wait until Lety left the house. He watched her drive off, then his hands or fingers would contact C.F.'s vagina, mostly over her clothes. They would then make their way back to the bedroom, where the abuse continued.

At some point, C.F. figured out that what appellant was doing was wrong, and she started to tell him no. When that happened, appellant would either beg her to let him touch her, or he would offer to buy her things. He bought her an iPod and "anything I really asked for." "[I]t was never no for an answer."

C.F. testified that "fifth grade camp" that she attended when she was 11 was a "benchmark" for when the abuse occurred. She testified that both before and after

fifth grade camp, there were incidents when appellant's penis, hand, or fingers contacted her vagina. She recalled "full-blown sex" when she was ten. She testified that the same abuse continued when she was eleven, twelve, thirteen, and fourteen. She got her period when she was fourteen and told appellant, but he continued to have sex with her. The last incident occurred when she was fourteen. The abuse stopped when appellant and Lety separated and appellant moved out of the house.

C.F. testified that she never told anyone about the abuse when it was happening because she did not want to get appellant in trouble. She told D.V. about the abuse later—about two years before trial—when D.V. told her appellant was touching her when they lived with them, and asked if it had ever happened to C.F. C.F. told her it had, but did not go into detail.

C.F. testified, however, that she began self-harming in seventh grade by cutting herself. She explained that she had become very depressed, testifying that "I think the silence was catching up with me and I was—needed a way to tell them, but not a way to get him in trouble, so I just started." The school found out and notified C.F.'s mother. When asked if she told the school or her mother why she was cutting herself, C.F. testified,

> A. I told them that—I told them that—I told them that I was getting bullied. But that wasn't the reason why. I didn't tell them the truth.
>
> Q. And what was the truth?
>
> A. I was being sexually assaulted.

Kristin Nichols of the Plano Police Department and forensic interviewer McKenzie McIntosh testified about their interview with C.F. after D.V.'s outcry. Nichols testified that in the interview, C.F. was "detailed, consistent, and chronological" and was clear on who her abuser was. Nichols corroborated C.F.'s outcry by confirming that appellant had "ongoing access" to C.F. both when C.F. was living in the same home and after, when C.F. came to the home after school. Nichols confirmed there were times when appellant and C.F. were home alone. She also confirmed that C.F. had behavioral changes around the time of the abuse, including cutting herself. Nichols testified that when she interviewed appellant, he denied he had abused C.F., and cited his breakup with Lety as the possible cause of a false report. Nichols found that explanation "odd or unusual" since it had been at least four years since C.F. had any contact with appellant.

McIntosh also testified about the forensic interview with C.F. She explained that C.F. gave sensory details and was consistent and chronological in her outcry. She saw no signs of coaching or any other red flags bearing on C.F.'s truthfulness. McIntosh testified about the details of the first assault as reported by C.F. as well as C.F.'s description of later assaults. McIntosh testified that C.F. described the assaults as "constant." McIntosh explained that C.F. appeared to have "script memory" of chronic abuse, "where there is a routine" so that specific instances "kind of blend together." McIntosh explained that with script memory of abuse, a person can recall a routine more than events on a specific date.

–10–

As to B.O., Count I of the indictment alleged appellant committed sexual abuse by "intentionally and knowingly, with the intent to arouse or gratify the sexual desire of any person, engag[ing] in sexual conduct by causing the buttocks of [B.O.], a child younger than seventeen (17) years of age, to touch part of the genitals of said defendant."

Nichols and McIntosh testified that B.O. was interviewed twice. During the first interview, B.O. did not make an outcry, but during the second interview, she did. Nichols testified that B.O. was "around 12" at the time of her outcry. McIntosh testified that a child is not brought back for a second interview unless the child has "made an outcry to someone or if there was some type of evidence." B.O. testified that she did not say anything in the first interview because she was worried that her mother would not believe her. But then C.F., her older sister, "told me that if anything ever happened then I should have told somebody because if I told somebody then . . . it would make everything much better." B.O. testified that she then told her mother, who took her for another forensic interview.

McIntosh testified that in the second interview, B.O. was "consistent, detailed, and chronological," and was "able to give sensory details," factors that McIntosh looks for during a child's forensic interview. She also testified that she did not see any signs of coaching or outside influences in B.O.'s interview.

Nichols testified that the abuse of B.O. took place in Plano at appellant and Lety's home. Nichols testified that in the course of her investigation, she interviewed

–11–

B.O.'s mother, D.V.'s mother, B.O.'s siblings, Lety, and others. Nichols testified that there were "consistencies" in how appellant abused B.O. and C.F., although she did not testify to the details.

B.O., who was thirteen and in the eighth grade at the time of trial, testified that she had known appellant most of her life, loved him, and thought of him as a grandfather. But she testified that her feelings changed after he touched her inappropriately. She testified to an instance of abuse that occurred before she was in third grade. She was attending a family get-together at appellant and Lety's home. B.O. testified that while most of the family was in the backyard, appellant took her into the front living room, took off her pants, bent her over the couch, and "rub[bed] his private part on my butt," "in between the crack." B.O. also testified to two instances when appellant "put his hand on [her] private part," once when they were together in appellant's truck and once in a van. She testified that his hand was moving on her thigh and her private part.

The trial court also heard testimony from D.V., who testified about "one specific time" when she was about six. Appellant called her into the bedroom, where he was alone, and asked her to get on top of him on the bed. Appellant was moving his hips up and down while she was on top of him, and his breathing was "heavy, and like, rough," different from his normal breathing. She felt his penis "by my private part." She made an excuse and got out of the room. She did not tell anyone; she did not realize until she was older that appellant's actions were "not right at all."

We conclude a rational trier of fact could have found the essential elements of the offense of continuous sexual abuse of a young child in violation of penal code section 21.02. *See Tear v. State*, 74 S.W.3d 555, 559 (Tex. App.—Dallas 2002, pet. ref'd) (when reviewing legal sufficiency, court "looks to whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution"). Consequently, we decide appellant's challenge to the legal sufficiency of the evidence to support the trial court's finding of guilt on Count I of the indictment against him. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 899.

**B. Indecency with a child by sexual contact, Count II**

Appellant next contends the evidence is insufficient to support his conviction for indecency with a child by sexual contact in Count II of the indictment. To obtain a conviction for indecency with a child by contact, the State must prove the appellant (1) engaged in sexual contact with a child and (2) the child was younger than seventeen years old. TEX. PENAL CODE § 21.11(a)(1); *Lee v. State*, 186 S.W.3d 649, 655 (Tex. App.—Dallas 2006, pet. ref'd). "Sexual contact" is defined to include "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child" or "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person," "if committed with the intent to arouse or gratify the sexual desire of any person." TEX. PENAL CODE § 21.11(c). The testimony of the child

victim alone is sufficient to support a conviction for indecency with a child by sexual contact. TEX. CODE CRIM. PROC. art. 38.07.

In Count II of the indictment, the State alleged that appellant "intentionally and knowingly, with the intent to arouse or gratify the sexual desire of any person, engage[d] in sexual contact by causing the feet of [C.F.], a child younger than seventeen (17) years of age, to touch part of the genitals of said defendant." Appellant does not address this alleged conduct specifically, relying instead on the arguments we have summarized above to explain why C.F. and other witnesses were not truthful.

McIntosh, the forensic interviewer, testified that she interviewed C.F. on March 4, 2019. McIntosh testified that in that interview, C.F. talked about "one of the last" incidents of abuse when C.F. was 14. McIntosh testified that C.F. "used the phrase he used her feet to jerk him off." McIntosh continued, "[w]hen describing that, she said that he was motioning her feet around his penis and moved them up and down as if he was masturbating with her feet."

At trial, C.F. testified,

Q. How old were you the very last time that you remember Jorge doing something sexual to you?

A. I was 14 years old.

Q. So what grade were you in?

A. Eighth grade or ninth grade, depending on the month.

Q. And what happened during that incident?

–14–

A. I remember the last one of the—the last time I remember was him grabbing my feet. We were in my grandma's room and he grabbed my feet and made me touch his penis with my feet.

Q. And were y'all in the bed or where in the bedroom were you when that happened?

A. Yes, we were laying on the bed.

Q. And is this at your grandma's house in Plano?

A. Yes.

Q. And was that in Collin County, Texas?

A. Yes.

The State argues that this testimony would support a finding that appellant's intent in these actions was to arouse or gratify his sexual desire. *See Cantu v. State*, 604 S.W.3d 590, 594 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (evidence was sufficient to prove appellant intended to arouse or gratify his sexual desire where complainant testified to appellant's act of masturbation). The State also argues that the factfinder can infer the requisite intent from conduct, remarks, or all of the surrounding circumstances. *See Tienda v. State*, 479 S.W.3d 863, 873 (Tex. App.—Eastland 2015, no pet.) ("the defendant's specific intent to arouse or gratify his sexual desire can be inferred from his conduct, his remarks, and all surrounding circumstances"); *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd) (same).

Although appellant's testimony denying any sexual contact with C.F. was some evidence to support a finding of not guilty, the trial court was the sole judge of

the witnesses' credibility and could choose to believe all or any part of each witness's testimony. "[W]e presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination." *Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015); *see also Tear*, 74 S.W.3d at 559–60 ("This Court is to ensure only that the [factfinder] reached a rational conclusion, not to re-evaluate the weight and credibility of the evidence."). We conclude a rational trier of fact could have found the essential elements of the offense of indecency with a child in violation of penal code section 21.11(a)(1). *See Jackson*, 443 U.S. at 319; *Tear*, 74 S.W.3d at 559.

We decide the remainder of appellant's first issue against him.

## 2. Specificity of indictment

In his second issue, appellant contends the State's indictment and notice of extraneous offenses failed to provide him with adequate notice of the number of offenses against the three victims he was charged with in order to prepare for trial. The State responds that appellant has failed to preserve error on this issue. The State also responds that if error has been preserved, the State provided adequate notice for appellant to prepare his defense for the charged offense of continuous sexual abuse of a child.

The sufficiency of an indictment is a question of law that we review de novo. *Smith v. State*, 297 S.W.3d 260, 267 (Tex. Crim. App. 2009).

The right to notice is set forth in both the United States and Texas Constitutions. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. "Thus, the charging instrument must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense." *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004). In addition, the code of criminal procedure provides guidelines relating to the sufficiency of an indictment. *See id.* (citing TEX. CODE CRIM. PROC. arts. 21.03 ("Everything should be stated in an indictment which is necessary to be proved."); 21.04 ("The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense."); and 21.11 ("An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment . . . ")).

Appellant contends the two-count indictment alleged three victims and four violations of the penal code. He concedes that the amended notice of intent to use extraneous offenses filed by the State "detailed considerably more." But he contends that during trial, C.F., B.O., and D.V. "alleged an amplified number of offenses possibly amounting to 500 or more acts," and he was unable to prepare "for this deluge of previously undisclosed allegations."

Citing *Kuhn v. State*, 393 S.W.3d 519, 525–29 (Tex. App.—Austin 2013, pet. ref'd), and *Martin v. State*, 335 S.W.3d 867, 876 (Tex. App.—Austin 2011, pet. ref'd), appellant acknowledges that "in a continuous sexual abuse case, if evidentiary facts exceed the date range in the indictment, that testimony can be considered to show the continuous nature of the abuse." But he argues that permitting the admission of evidence on so many additional acts constituted an "erosion of due process."

The State argues that appellant failed to object at trial and consequently failed to preserve his complaint, and we agree. A defendant forfeits his right to complain about any defect, error, or irregularity of form or substance in an indictment if he fails to object before trial commences. TEX. CODE CRIM. PROC. art. 1.14(b); *Teal v. State*, 230 S.W.3d 172, 178, 182 (Tex. Crim. App. 2007). "A complaint that an indictment does not provide adequate notice alleges a defect in form." *State v. Espinoza*, No. 05-09-01260-CR, 2010 WL 2598982, at *8 (Tex. App.—Dallas June 30, 2010, pet. ref'd) (mem. op., not designated for publication) (citing *Olurebi v. State*, 870 S.W.2d 58, 61 (Tex. Crim. App. 1994)). Here, appellant contends the State failed to provide him with adequate notice of the number of offenses charged, but he failed to raise this issue before trial. Appellant's complaint has not been preserved for appellate review.

Waiver aside, we conclude that the indictment provided adequate notice. A continuous sexual abuse indictment need not allege the manner and means by which

the predicate offenses were committed to provide constitutionally sufficient notice of the crime charged. *Buxton v. State*, 526 S.W.3d 666, 682 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). To commit the offense of continuous sexual abuse, the defendant must commit two or more "acts of sexual abuse," which is statutorily defined by reference to eight different offenses under the penal code, "during a period that is 30 or more days in duration." TEX. PENAL CODE § 21.02(c). The indictment in this case tracked the language of the statute because it alleged the commission of three predicate offenses enumerated in penal code section 21.02, specifically, "aggravated sexual assault of a child" as to C.F. (*see* TEX. PENAL CODE § 21.02(c)(4)), and "indecency with a child sexual contact" (*see* TEX. PENAL CODE § 21.02(c)(2)) as to C.F. and B.O., during a period that was 30 days or more in duration.[2]

In addition, as explained in *Buxton*, even if the indictment, standing alone, was not sufficient to provide notice to satisfy due process concerns, courts may look at other sources to determine if the defendant had notice of the charges against him.

---

[2] Citing *State v. Edmond,* 933 S.W.2d 120, 128 (Tex. Crim. App. 1996), appellant argues that "where a criminal statute possesses statutorily-defined, alternative methods of committing an offense, then upon timely request, a defendant is entitled to an allegation of which statutory method the State intends to prove." *See id.* at 128–29 (discussing offense of official oppression). We have explained, however, that penal code section 21.02 "defines the two or more acts involved as a means of committing a single criminal offense." *Render v. State*, 316 S.W.3d 846, 857 (Tex. App.—Dallas 2010, pet. ref'd). In *Render*, as here, "the State sought one conviction for a 'series' of acts of sexual abuse." *Id.* The series of acts alleged were not multiple criminal offenses. *Id.* Consequently, we rejected the appellant's argument that section 21.02 permitted convictions when the jury was not unanimous. *See id.* at 855–57. Similarly here, the State did not seek to prove additional offenses that were not alleged in the indictment. Instead, it introduced evidence of underlying acts of sexual abuse to support the charged offense of "continuous sexual abuse." *See* TEX. PENAL CODE ANN. § 21.02.

*Buxton*, 526 S.W.3d at 682–83 (citing *Smith*, 297 S.W.3d at 267, and *Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003)). Here, the State filed notice under code of criminal procedure article 38.37 of its intent to introduce evidence of extraneous offenses detailing additional abuse against C.F., B.O., and D.V., and defense counsel "acknowledge[d] having timely received notice under 38.37 of these additional unindicted acts." The defendant does not suffer harm unless he did not, in fact, receive notice of the State's theory against which he would have to defend. *See Smith*, 297 S.W.3d at 267; *Buxton*, 526 S.W.3d at 683 ("We conclude that, when considering the indictment and the various pretrial filings by the State together, as we are authorized to do, appellant received ample notice of the State's theory of criminal liability such that he could prepare a defense.").

Further, we conclude appellant's due process concerns are not supported by the record. C.F. testified that appellant sexually abused her multiple times a week from the time she was nine years old and in the fourth grade until she was fourteen and in the eighth grade. In closing argument, defense counsel referred to this testimony: "she's talking about full-blown sex several times a week for five years. Your Honor, I hate to think you know, what that arithmetic shows, but it sounds like it has to be at least—if it's twice a week, that's 100 times—500 times full-blown sex." This argument was made in the context of counsel's contention that C.F.'s testimony that any abuse occurred at all was not credible. He argued the forensic interviewer would have remembered and noted a claim of so many incidents. He

–20–

also argued that there were many people "in and out of the house" where the abuse was alleged to have occurred; and "never anybody had an inkling" until the children made an outcry years after the abuse.

In sum, appellant argued the trial court should disbelieve all of the State's evidence, not evidence of any particular incident. Appellant was given timely and detailed pretrial notice of each child's allegations, including C.F.'s allegations that incidents of abuse began when she was nine years old and continued "almost weekly" until she was fourteen. We conclude that no violation of due process occurred. *See Moff*, 154 S.W.3d at 601. We decide appellant's second issue against him.

### 3. Modification of judgments

Our review of the record reveals that the judgment for each Count incorrectly reflects appellant's "Plea to Offense" as "Guilty." Appellate courts may modify a trial court's judgment and affirm it as modified. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). This Court "has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so." *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd). "The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* at 529–30. The record reflects that appellant pleaded "not guilty" to both

Counts. Accordingly, we modify the judgments for both Count I and Count II to reflect appellant's plea of "Not Guilty."

## CONCLUSION

We modify the trial court's judgments in cause numbers 416-82189-2020, Count I and 416-82189-2020, Count II, and affirm the judgments as modified.

/Leslie Osborne//
LESLIE OSBORNE
JUSTICE

200811f.u05
200812f.u05
Do Not Publish
Tex. R. App. P. 47.2(b)



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JORGE GARCIA OLGUIN,
Appellant

No. 05-20-00811-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 416-82189-
2020, Count I.
Opinion delivered by Justice
Osborne. Justices Schenck and Smith
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** to reflect appellant's "Plea to Offense" as "Not Guilty."

As modified, the judgment is **AFFIRMED**.

Judgment entered this 9th day of September, 2022.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JORGE GARCIA OLGUIN,
Appellant

No. 05-20-00812-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 416-82189-
2020, Count II.
Opinion delivered by Justice
Osborne. Justices Schenck and Smith
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** to reflect appellant's "Plea to Offense" as "Not Guilty."

As modified, the judgment is **AFFIRMED**.

Judgment entered this 9th day of September, 2022.