

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00116-CR

**SHAWN RAE CARRIER,**

        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

        **Appellee**

**From the 18th District Court
Johnson County, Texas
Trial Court No. F45088**

## MEMORANDUM  OPINION

In two issues, appellant, Shawn Rae Carrier, challenges his conviction for assaulting a public servant, a third-degree felony.  *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1) (West 2011).  We affirm.

### I.     BACKGROUND

Here, appellant was charged with one count of assaulting a public servant— Detective David Feucht of the Burleson Police Department.  *See id.*  The charge stemmed

from an incident involving appellant, appellant's wife, and Detective Feucht on December 22, 2010.

On the day in question, appellant and his wife, Stephanie, traveled to Walmart to return a Nintendo Wii video-game console they had purchased for their children. According to Stephanie, appellant was not feeling well that day because he had received treatment earlier in the day for a staph infection on his foot. In any event, Walmart refused to return the video-game console because Stephanie did not also return a gift card that she had received when she purchased the item. Stephanie returned to the car mad.

Stephanie testified that she and appellant got into a fight as they were leaving the Walmart parking lot. Stephanie noted that she was mad that Walmart would not return the video-game console and that she wanted to take appellant home. Appellant did not wish to go home. Apparently, the couple began arguing with each other, and appellant eventually told Stephanie to "shut the hell up." Stephanie responded by hitting appellant in the chest with a closed fist and "peel[ing] out from the stop sign." Appellant warned Stephanie to not hit him again. Stephanie ignored the warning and hit appellant once again. The couple exchanged blows as appellant grabbed the steering wheel and tried to direct the car into a wall. Stephanie prevented the car from hitting a wall by pressing the brake pedal on the car. The couple continued to hit each other. Eventually, appellant grabbed Stephanie by the hair on the back of her head, bent her head down, and punched her in the face with a closed fist. As a result of this blow, Stephanie's nose began to bleed.

Detective Feucht, dressed in plain clothes, was driving his unmarked, black Dodge Charger by the Walmart at the time. From his car, Detective Feucht observed the fight between appellant and Stephanie. Detective Feucht called in the assault-in-progress, stopped his car by the couple's car, and exited his vehicle to investigate the incident. Detective Feucht observed Stephanie get out of the car and walk away with appellant following. Detective Feucht, a twenty-three-year veteran of the police force, testified that he identified himself to appellant and ordered appellant to stop. Appellant ignored the order, returned to his car, got behind the wheel of the car, and attempted to drive away.

Detective Feucht caught up with the vehicle as appellant began to drive away and banged on the car windows while ordering appellant to stop. This angered appellant. As a result, appellant stopped and exited the vehicle, approached Detective Feucht, and demanded to know why Detective Feucht had hit the car. At this point, Detective Feucht informed appellant that he was under arrest and ordered him to get on the curb. Appellant turned and slapped Detective Feucht in the face, knocking Detective Feucht's sunglasses off his face onto the road. Stunned, Detective Feucht backed up, pulled out his service weapon, and ordered appellant to get on the ground. Appellant twice dared Detective Feucht to shoot him. Realizing that Detective Feucht was not going to shoot him, appellant returned to his car. Detective Feucht re-holstered his service weapon, attempted to take appellant's keys out of the ignition of the car, and tried to arrest appellant. Appellant slapped the cuffs away, returned to his car, locked the door, and drove away.

Detective Feucht returned to his car and was soon met by Burleson Police Officer Paul Lancaster. As Detective Feucht told Officer Lancaster what had happened, appellant returned to the Walmart parking lot to pick up Stephanie. When appellant opened the door, Detective Feucht and Officer Lancaster ordered appellant to get out and get on the ground. Once again, appellant refused. Detective Feucht and Officer Lancaster then pulled appellant out of the car, forced him to the ground, and placed him under arrest.

Appellant and Stephanie had a different recollection of the events that transpired that day. Appellant and Stephanie denied seeing Detective Feucht's badge. They also denied hearing Detective Feucht identify himself as a police officer. Appellant believed Detective Feucht to be a meddlesome stranger who needed to "mind his own business." Nevertheless, Stephanie admitted that she loved appellant and that she hoped to help her husband with her testimony.

At the conclusion of the evidence, the jury found appellant guilty of the charged offense and assessed punishment at four years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. However, the jury recommended that the sentence be suspended and that appellant be placed on community supervision for four years. The trial court agreed and thereby suspended appellant's four-year sentence and placed him on community supervision for four years. Appellant filed a pro se motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c). This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant contends that the evidence supporting his conviction is legally insufficient. Specifically, appellant argues that the evidence contained in the record does not sufficiently demonstrate that he knew that Detective Feucht was a police officer and that Detective Feucht endured bodily injury as a result of appellant's actions. We disagree.

### A. Applicable Law

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.

*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A person commits the offense of assault on a public servant if he intentionally, knowingly, or recklessly causes bodily injury to a person he knows is a public servant while the public servant is lawfully discharging an official duty. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1).

**B.    Bodily Injury**

At trial, Detective Feucht testified that he felt pain when appellant slapped him in the face and knocked off his sunglasses. However, on appeal, appellant asserts that Detective Feucht's testimony is insufficient because he did not describe the nature, degree, or duration of the pain. Appellant does not cite authority in support of this contention.

"Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8) (West Supp. 2012). Under this definition, "[a]ny physical pain, however minor, will suffice to establish bodily injury."

*Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012) (citing *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009)). "A fact finder may infer that a victim actually felt or suffered physical pain because people of common intelligence understand pain and some of the natural causes of it." *Id.* (citing *Randolph v. State*, 152 S.W.3d 764, 774 (Tex. App.—Dallas 2004, no pet.)). Moreover, "[d]irect evidence that a victim suffered pain is sufficient to show bodily injury." *Laster*, 275 S.W.3d at 524.

Therefore, viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could conclude beyond a reasonable doubt that Detective Feucht felt pain when appellant hit him and, thus, sustained bodily injury at the hands of appellant. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(8), 22.01(a)(1); *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. As such, we cannot say that the evidence pertaining to the bodily-injury element of the charged offense is insufficient. *See Jackson*, 443 U.S. at 318-19, 99 S. Ct. 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13.

## C.      Whether Appellant Knew Detective Feucht Was a Public Servant

Appellant also argues that the record does not contain sufficient evidence demonstrating that he knew that Detective Feucht was a public servant lawfully discharging an official duty. Detective Feucht stated that, on the day in question, he was wearing jeans, a collared shirt, a jacket, his service weapon, and his badge. After Stephanie exited the vehicle and appellant began chasing her, Detective Feucht moved towards appellant and shouted, "Stop. Police." Detective Feucht estimated that he was fifteen to twenty feet away from appellant when he shouted this command. Detective

Feucht also believed that appellant heard him because appellant "stopped and looked" at him. In any event, appellant ignored Detective Feucht's command and walked back to his car. Detective Feucht once again shouted, "Stop. Police. Don't go to the car." Appellant again ignored Detective Feucht, got into the car, and began to drive away. As appellant drove away, Detective Feucht pounded on the window of the car and shouted, "Stop. Stop." Appellant stopped the car, opened the door, and walked towards Detective Feucht, screaming obscenities. Detective Feucht testified that he told appellant that he was under arrest and commanded him to step up to the curb. At this point, appellant struck Detective Feucht in the face. Detective Feucht insisted that appellant heard him and that appellant should have seen his badge because his "jacket was open and it was moving."

Officer Paul Lancaster of the Burleson Police Department testified that he responded to Detective Feucht's call for backup. Officer Lancaster testified that, in these types of situations, an officer is trained to first "identify yourself as a police officer," which Detective Feucht alleged that he did. In addition, Officer Lancaster recalled that he was able to see Detective Feucht's badge when he arrived. Officer Lancaster believed it to be absurd that Detective Feucht did not identify himself to appellant as a police officer and that appellant did not see Detective Feucht's badge.

On the other hand, appellant testified on his own behalf. In his testimony, appellant denied seeing Detective Feucht's badge, and he denied hearing Detective Feucht identify himself as a police officer. Moreover, Stephanie corroborated

appellant's testimony, though she did admit that she desired to help appellant with her testimony.

As noted above, it is within the discretion of the factfinder—the jury—to resolve any conflicts in the testimony, and we are to defer to the jury's resolution of such conflicts. *See Jackson*, 443 U.S. at 329, 99 S. Ct. 2792-93; *see also Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Chambers*, 805 S.W.2d at 461; *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge."). Clearly, by convicting appellant of the charged offense, the jury resolved any conflicts in the evidence against appellant, and we are to defer to the jury's resolution of the facts. *See Jackson*, 443 U.S. at 329, 99 S. Ct. 2792-93; *see also Lancon*, 253 S.W.3d at 706; *Chambers*, 805 S.W.2d at 461; *Render*, 316 S.W.3d at 859.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have found beyond a reasonable doubt that appellant knew that Detective Feucht was a police officer discharging an official duty at the time of the assault. *See* TEX. PENAL CODE ANN. § 22.01(b)(1); *Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. Accordingly, we conclude that the evidence supporting appellant's conviction is sufficient. *See Jackson*, 443 U.S. at 318-19, 99 S. Ct. 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. We overrule appellant's first issue.

## III.    THE ADMISSION OF AN APPLICATION AND MAGISTRATE'S ORDER FOR EMERGENCY PROTECTION

In his second issue, appellant argues that the trial court erred in admitting an application and magistrate's order for emergency protection over his objection. Specifically, appellant asserts that the document was irrelevant to the proceedings, introduced inadmissible character evidence, and was highly prejudicial. The State responds that any error associated with the admission of this evidence was harmless. We agree.

### A.    Facts

During the State's cross-examination, Stephanie acknowledged that, after the incident, she did not see appellant again until seven days later when he bonded out of jail. Stephanie noted that appellant moved back in with her after he bonded out. However, when confronted with State's exhibit 8, which was a copy of the application and magistrate's order for emergency protection, Stephanie clarified that she and appellant did not live together after she picked him up from the jail but that they live together now.[1] In any event, appellant objected to the introduction of State's exhibit 8 on hearsay grounds and under Texas Rules of Evidence 401, 403, and 404(b). *See* TEX. R. EVID. 401, 403, 404(b). The trial court overruled appellant's objections, admitted the exhibit, and allowed the State to publish the exhibit to the jury. On appeal, appellant's second issue mirrors the objections he made in the trial court to State's exhibit 8.

---

[1] The protective order stated that, among other things, appellant was prohibited from being within 500 feet of Stephanie, the couple's house, and Stephanie's place of employment for a period of sixty days from December 23, 2010.

**B.    Harm Analysis**

Assuming, without deciding, that the trial court abused its discretion by admitting State's exhibit 8, we conclude that any error was harmless.  It is undisputed that the purported error in this case amounts to non-constitutional error; accordingly, we must apply a harm analysis under Texas Rule of Appellate Procedure 44.2(b).  *See* TEX. R. APP. P. 44.2(b).  In doing so, we must disregard non-constitutional errors that do not affect a criminal defendant's "substantial rights."  *See id.*  Under this standard, an error is reversible only when it had a substantial and injurious effect or influence in determining the jury's verdict.  *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).  We should not overturn the conviction if we have fair assurance from an examination of the record as a whole that the error did not influence the jury, or had but a slight effect.  *Id.*  In assessing the likelihood that a jury's decision was adversely affected by the error, we consider the entire record, including any testimony or physical evidence admitted, the nature of the evidence supporting the verdict, the character of the alleged error, and how it might have been considered in connection with other evidence.  *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  We may also consider jury instruction, the State's theory, any defensive theories, closing argument, voir dire, and whether the State emphasized the error.  *Id.* at 355-56.

Here, the record evidence supporting the jury's verdict consisted mainly of Detective Feucht's testimony.[2]  As noted earlier, Detective Feucht testified that he

---

[2] Also included in the evidence is a photograph of Detective Feucht's sunglasses lying in the middle of the road, which corroborated Detective Feucht's testimony about what had transpired between him and appellant.

observed part of the conflict between appellant and Stephanie. In addition, Detective Feucht noted that he identified himself to appellant and told appellant to stop several times during the incident. Moreover, Detective Feucht recalled that he was wearing his badge and service weapon on the day of the incident. Furthermore, appellant did not deny hitting Detective Feucht; he merely denied knowing that Detective Feucht was a public servant at the time of the assault. As we concluded earlier, there was sufficient evidence to support the jury's verdict. And after reviewing the record, we find that, during two days of testimony, the State only asked a few questions about State's exhibit 8 and made a passing reference to the exhibit in its closing argument. The vast majority of the State's case focuses on Detective Feucht's testimony about the incident.[3]

When compared to the evidence pointing to appellant's guilt, we believe that State's exhibit 8 likely was of little consequence to the jury. *See Motilla*, 78 S.W.3d at 357 (stating that the presence of overwhelming evidence may be a factor in the evaluation of harmless error). Moreover, we have "a fair assurance that the error did not influence the jury, or had but a slight effect." *See id.* at 355; *see also* TEX. R. APP. P. 44.2(b); *Taylor*, 268 S.W.3d at 592. Accordingly, we overrule appellant's second issue.

---

[3] We recognize that both appellant and Stephanie testified that Detective Feucht did not identify himself as a police officer. And though this testimony conflicts with that of Detective Feucht, we note that the testimony of both appellant and Stephanie was undermined. Stephanie admitted that she hoped to assist appellant with her testimony. In addition, she made conflicting statements about whether appellant moved in with her after he bonded out of jail. Appellant noted that he had "never been in a fight a day in [his] life until [he] hit [Detective Feucht]." Given the testimony about the fight between appellant and Stephanie transpiring the same day, the jury likely did not find appellant's testimony to be credible. Nevertheless, in his brief, appellant attempts to isolate the testimony of Stephanie, as "the only independent witness." However, as noted earlier, Stephanie was not an "independent witness." Moreover, when conducting a harm analysis under rule 44.2(b), we are to consider the entire record, not just the isolated testimony of one witness. *See* TEX. R. APP. P. 44.2(b); *see also Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008); *Motilla v. State*, 78 S.W.3d 352, 355-56 (Tex. Crim. App. 2002).

## IV.    CONCLUSION

Having overruled both of appellant's issues, we affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed October 17, 2013
Do not publish
[CR25]