

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00299-CR

**MICHAEL LANGLEY,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 369th District Court
Leon County, Texas
Trial Court No. 18-0127CR**

## MEMORANDUM OPINION

In one issue, appellant, Michael Langley, challenges the sufficiency of the evidence supporting his conviction for injury to an elderly individual. *See* TEX. PENAL CODE ANN. § 22.04(a). We affirm.

## Issue One

In his sole issue on appeal, Langley contends that the finding of guilt is irrational, and thus, the evidence is insufficient to support his conviction.[1] We disagree.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be

---

[1] Our records reflect that, despite being represented by counsel, Langley has filed numerous pro se documents in this Court. A party represented by counsel is not entitled to hybrid representation. *See Robinson v. State*, 240 S.W.3d 919, 922 (Tex. Crim. App. 2007) (noting that courts are free to disregard pro se motions presented by a defendant represented by counsel); *Ex parte Taylor*, 36 S.W.3d 883, 887 (Tex. Crim. App. 2001). As such, we will not respond to Langley's numerous pro se documents filed in this Court.

sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Here, Langley was charged by indictment with intentionally or knowingly causing bodily injury to Evelyn Carrington, an individual sixty-five years of age or older and a member of the defendant's household by striking her in the face with his hand. *See* TEX. PENAL CODE ANN. § 22.04(a). A person commits the offense of causing injury to an elderly individual if he intentionally, knowingly, recklessly, or with criminal negligence causes an elderly individual: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury. *Id.* "Elderly individual" means a person sixty-five years of age or older. *Id.* § 22.04(c)(2). "Bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). On appeal, Langley asserts that the evidence is insufficient to show that he caused bodily injury to Evelyn.

Evelyn met Langley, who is about thirty years her junior, at a Subway restaurant in Jewett, Texas.[2] Evelyn recalled that Langley was profusely perspiring, looked sick, and carried "a staff like Moses carried." Langley overheard that Evelyn needed her house painted and interjected that that was his line of work. Feeling sorry for Langley, Evelyn invited him over to her house on several occasions to help her and do odd jobs. Eventually, Langley moved into Evelyn's house.

All was well for several years until Langley's demeanor changed. Evelyn noted that Langley began to curse often, get mad at her, and drove away her family and friends. At this point, Evelyn wanted Langley to leave her house, which, as Evelyn described in her testimony, led to the incident in question. Specifically, she described the incident as follows:

> He was sitting at the end of the dining room table there, and I stood facing him, and I said Today—I've asked you to leave my home, and asked you to leave my home, I've called the law and asked you to leave my home, and you wouldn't leave, and now I'm going to have to evict you. You'll leave my home today.

When told this, Langley "jumped up, and he slapped me here. And then, he grabbed me this way, and put my head into the wall there, into the door facing." Evelyn recalled that "[i]t hurt me so bad, I was just—In other words, I was hurting, and I was—I wasn't thinking straight."

---

[2] At the time of trial, Evelyn was eighty-one years old.

Deputy Cody Wood of the Leon County Sheriff's Office testified that, on August 29, 2018, Evelyn called to report that she "had a knot on the top of her head from where she was shoved into a wall, and then, her face and her ear where she had been hit." Deputy Wood went to Evelyn's residence to investigate and recalled seeing a "bump on the top of her head" and that "she did have a slight red spot on the side of her face." Photographs of Evelyn's injuries were admitted into evidence. Based on his observations, Deputy Wood believed that Evelyn had been assaulted. When Deputy Wood asked to speak with Langley, Evelyn indicated that she did not want that to happen because "it would just make matters worse." Deputy Wood noted that Evelyn's comments about Langley made him concerned about her safety.

Deputy Jerry Nichols of the Leon County Sheriff's Office testified that he was dispatched to Evelyn's house two days after she had spoken with Deputy Wood. During her encounter with Deputy Nichols, Evelyn was "pretty shaken up." Deputy Nichols testified that Evelyn was remorseful and attempted to recant her story about the assault. Evelyn also told Deputy Nichols that she was afraid of Langley. Describing the incident with Langley two days prior, Evelyn told Deputy Nichols that she had,

> gotten into a verbal altercation [with Langley]. She was upset because he stated he wanted to purchase a motorcycle. And at that point, they were crossing paths in the doorway, and he, being a bigger man, is how she put it, bumped into him—or, bumped into her, and she bumped into the doorway.

Evelyn then expressed her appreciation for Langley and that she was worried who would be taking care of her in the future. According to Deputy Nichols, Evelyn felt dependent on Langley. Deputy Nichols also recounted that Evelyn's behavior that day was odd and that it is common for victims of domestic violence to change their stories "out of fear of the other person that caused continuous harm, or they're not financially stable, or they would feel alone if they separated from that individual."

Robert Carrington, Evelyn's son, noted that, on the day of the incident, his mother came over to his house crying with a washcloth across her face. Evelyn told Robert that Langley had hit her. Robert recounted that his mother did not waver about the assault, but "at one point told me that it was a mistake. I wouldn't say that she said it didn't happen, it was a mistake."

Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient for the jury to have determine beyond a reasonable doubt that Langley was guilty of the offense of injury to an elderly individual. *See* TEX. PENAL CODE ANN. § 22.04(a); *see also Zuniga*, 551 S.W.3d at 732-33. And to the extent that the evidence conflicts, we are to defer to the jury's resolution of such inconsistencies in the evidence. *See Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor,

which the jury is in a better position to judge."); *see also Pollock v. State*, 405 S.W.3d 396, 402 (Tex. App.—Fort Worth 2013, no pet.) (noting that a rational juror could have found the essential elements of the offense beyond a reasonable doubt even when the complainant recanted because such testimony simply presents a conflict in the evidence to be resolved by the jury (citing *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (holding that complainant's recantation of her videotaped testimony did not destroy its probative value and that the jury was entitled to disbelieve the recantation))). We overrule Langley's sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.


MATT JOHNSON
Justice

Before Chief Justice Gray,
        Justice Johnson, and
        Justice Rose[3]
Affirmed
Opinion delivered and filed August 25, 2021
Do not publish
[CR25]



---

[3] The Honorable Jeff Rose, Former Chief Justice of the Third Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.