

IN THE
TENTH COURT OF APPEALS

No. 10-12-00059-CR

RAYMOND ODOM, JR.,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the County Court
Navarro County, Texas
Trial Court No. 32,741

MEMORANDUM OPINION

In four issues, appellant, Raymond Keith Odom, Jr., challenges his convictions for sexual assault of a child, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A), (f) (West 2011). We affirm.

I. BACKGROUND

Here, appellant was charged by indictment with two counts of sexual assault of a child, stemming from incidents allegedly perpetrated against A.J., a child younger than seventeen years of age, on May 20 and 21, 2009. The State later provided notice of its

intent to enhance punishment with appellant's prior felony conviction for burglary of a habitation.

At the conclusion of the evidence, the jury found appellant guilty on both counts. Appellant pleaded true to the enhancement allegation, and the trial court sentenced appellant to twenty-five years' confinement in the Institutional Division of the Texas Department of Criminal Justice on both counts. Moreover, the trial court cumulated the imposed sentences and certified appellant's right of appeal in this matter. This appeal followed.

## II. APPELLANT'S RIGHT TO CONFRONT WITNESSES

In his first issue, appellant contends that the trial court violated his constitutional right to confront witnesses. Specifically, appellant argues that the trial court erred by excluding evidence that A.J. "had made prior allegations of the exact same nature against a number of other people."

### A. Applicable Law

We review a trial court's decision to exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008). A trial court does not abuse its discretion if any evidence supports its decision. *See Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). We will uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case. *See De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

The Sixth Amendment right to confront witnesses "includes the right to cross-examine witnesses to attack their general credibility, or to show their possible bias, self-interest, or motives in testifying." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009). Generally, the Texas Rules of Evidence permit a defendant to "cross-examine a witness for his purported bias, interest, and motive without undue limitation or arbitrary prohibition." *Id.* at 563; *see* TEX. R. EVID. 613(b) (providing for impeachment of a witness by evidence of alleged bias or interest in favor or against a party); *see also Billodeau v. State*, 277 S.W.3d 34, 42-43 (Tex. Crim. App. 2009) ("The possible animus, motive, or ill will of a prosecution witness who testified against the defendant is never a collateral or irrelevant inquiry, and the defendant is entitled, subject to reasonable restrictions, to show any relevant fact that might tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness testifying against him."); *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998) ("Exposing a witness' motivation to testify for or against the accused or the State is a proper and important purpose of cross-examination."). The scope of permissible cross-examination is "necessarily broad." *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). "A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias[,] or interest for the witness to testify." *Id.*

This broad scope of cross-examination does not mean, however, "that a defendant can explore every possible line of inquiry." *Smith v. State*, 352 S.W.3d 55, 64 (Tex. App.—Fort Worth 2011, no pet.). "[T]rial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other

things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435, 89 L. Ed. 2d 674 (1986); *see also Hammer*, 296 S.W.3d at 561 ("This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination.").

Generally, Texas Rule of Evidence 412 does not permit reputation or opinion evidence of a complaining witness's past sexual behavior in a criminal trial for sexual assault. *See* TEX. R. EVID. 412. The exceptions are when evidence (1) is necessary to rebut or explain scientific or medical evidence offered by the State, (2) is of past sexual behavior with the accused and is offered by the accused upon the issue of whether the alleged victim consented to the charged sexual behavior, (3) relates to the motive or bias of the alleged victim, (4) is admissible under Rule 609, pertaining to impeachment by evidence of conviction of a crime, or (5) is constitutionally required to be admitted. *See id.* at R. 412(b)(2)(A)-(E). Even if the evidence falls under one of the five listed exceptions, its probative value must still outweigh the danger of unfair prejudice. *See id.* at R. 412(b)(3); *see also id.* at R. 403.

When a state procedural rule does not satisfactorily permit the defense to attack the credibility of a witness, the rule must give way to the constitutional right. *See Davis v. Alaska*, 415 U.S. 308, 319-20, 94 S. Ct. 1105, 1111-12, 39 L. Ed. 2d 347 (1974). The Constitution, however, does not confer a right in every case to impeach the general credibility of a witness through cross-examination about prior instances of conduct. *See id.* at 321, 94 S. Ct. at 1112-13 (Stewart, J., concurring); *see also Wheeler v. State*, 79 S.W.3d

78, 88 (Tex. App.—Beaumont 2002, no pet.). Nor does the Constitution confer upon a defendant an absolute "right to impeach the general credibility of a witness in any fashion that he chooses." *Hammer*, 296 S.W.3d at 562.

"[A] defendant may always offer evidence of a pertinent trait—such as truthfulness—of any witness." *Id.* at 563. But the witness's general character for truthfulness may be shown only through reputation or opinion testimony. *See id.; see also* TEX. R. EVID. 608(a). "A witness's general character for truthfulness or credibility may not be attacked by cross-examining him (or offering extrinsic evidence) concerning specific prior instances of untruthfulness." *Hammer*, 296 S.W.3d at 563. In fact, the *Hammer* Court stated that: "Prior false allegations of rape do not tend to prove or disprove any of the elements of the charged sexual offense." *Id.* at 564. "If, however, the cross-examiner offers evidence of a prior false accusation of sexual activity for some purpose other than a propensity attack upon the witness's general character for truthfulness, it may well be admissible under our state evidentiary rules." *Id.* at 565.

## B.    Discussion

Here, appellant complains that he was prevented from introducing into evidence and cross-examining witnesses about recanted prior accusations made by A.J. Appellant also complains that the trial court prevented him from cross-examining witnesses regarding A.J.'s accusations against her cousin Tommy.

After the direct-examination of A.J., but prior to cross-examination, the trial court held a hearing outside the presence of the jury to determine whether appellant was entitled to cross-examine A.J. regarding other sexual-abuse allegations she has made.

During the hearing, A.J. acknowledged that she has been treated two or three times at psychiatric hospitals. Later, she was asked about prior allegations she made against her father, brother, and Tommy. A.J. admitted that she did recant the allegation against her brother. She also testified that she never made an accusation against her father and that the allegation against Tommy was true. Jessica Singletarry, formerly a Family-Based Safety Services caseworker for the Department of Family and Protective Services, was questioned about the CPS report in which she stated that A.J. had told her that appellant and Tommy had got her drunk and performed oral sex on her. Singletarry mentioned that A.J. was not mentally coherent when she made these allegations. Singletarry commented that A.J.'s statements were illogical. Singletarry did not testify regarding A.J.'s purported allegations against her father and brother.

At the conclusion of the hearing, the trial court determined that appellant could cross-examine A.J. about the recanted allegation against her brother, but he could not cross-examine A.J. regarding the allegation against Tommy. And because appellant asserted that he would be calling witnesses to prove the falsity of the claims, the trial court did not make a determination regarding A.J.'s purported allegation against her father.

Texas Rule of Evidence 608(b) provides that: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence." *See* TEX. R. EVID. 608(b). The record clearly establishes that appellant's defensive theory at trial was to attack

A.J.'s credibility by presenting evidence of her prior accusations of sexual abuse and her mental-health issues.[1] Moreover, appellant never made a showing that A.J.'s allegation against Tommy was false.[2] *See Lopez v. State*, 18 S.W.3d 220, 226 (Tex. Crim. App. 2000) ("Without proof that the prior allegation was false or that the two accusations were similar, the evidence fails to have any probative value in impeaching [complainant's] credibility in this case. For these same reasons, the risk that this evidence would unduly prejudice and confuse the jury was high."); *see also Hammer*, 296 S.W.3d at 569 n.4. Furthermore, the trial court allowed appellant to cross-examine witnesses regarding A.J.'s recantation of her accusation against her brother, thus undermining appellant's complaint in this issue. In fact, appellant asked questions of subsequent witnesses about A.J.'s accusations against her brother. Therefore, based on the foregoing, we cannot say that the trial court's decision to deny appellant the opportunity to cross-examine witnesses about A.J.'s accusation of sexual assault against Tommy was an abuse of discretion. *See* TEX. R. EVID. 608(b); *Hammer*, 296 S.W.3d at 562-

---

[1] Indeed, appellant's counsel argued the following at the in-camera hearing:

To show that those are stories that are inconsistent and that are consistent with—with my theory of the case, which is that because of mental health issues or because of her desires to do something different from time to time that she would—that she would fabricate, and that's the crux of the entire case, Your Honor, and if I'm not permitted to question the witness—the complaining witness about these various stories, then I'm left unable to establish the most important aspects of this case, which clearly are the credibility of the complaining witness . . . .

[2] Furthermore, we do not believe that A.J.'s allegations against Tommy are similar to the charged offenses in this case. Specifically, A.J. testified during the in-camera hearing that Tommy got her drunk, forced her to do a keg stand, and performed oral sex on her. Here, appellant is charged with penetrating A.J.'s vagina with his penis on two different occasions, neither of which involved Tommy.

65; *Lopez*, 18 S.W.3d at 226; *see also Martinez*, 327 S.W.3d at 736; *Taylor*, 268 S.W.3d at 579; *Osbourn*, 92 S.W.3d at 538. Accordingly, we overrule appellant's first issue.

## III. EXCLUSION OF A.J.'S MEDICAL RECORDS

In his second issue, appellant asserts that the trial court abused its discretion by excluding exculpatory evidence allegedly contained in A.J.'s medical records from the Green Oaks State Hospital.

During a hearing outside the presence of the jury, appellant sought to introduce the mental-health records of A.J. from Green Oaks State Hospital, which were obtained by A.J.'s aunt, Tammy Jackson, who is appellant's mother. Included with the records was a release signed by Tammy that appellant argued allowed Tammy to obtain the records from the medical provider. The trial court noted that the previous testimony revealed that, although she had lived with Tammy previously, A.J. was in the custody of CPS at the time the records were obtained by Jackson. The trial court excluded the records, stating a concern that admitting the records would constitute a violation of The Health Insurance Portability and Accountability Act ("HIPAA"). *See* THE HEALTH INSURANCE PORTABILITY & ACCOUNTABILITY ACT OF 1996, Pub. L. No. 104-191 (codified as amended at 42 U.S.C. § 1301).

On appeal, appellant does not cite any authority to support his contention that the trial court improperly excluded A.J.'s medical records under HIPAA. Accordingly, we conclude that this issue has been inadequately briefed. *See* TEX. R. APP. P. 38.1.

Nevertheless, even if the issue had been adequately briefed, we do not believe that the trial court abused its discretion by excluding A.J.'s medical records from Green

Oaks State Hospital. The record demonstrates that several witnesses, including A.J., described A.J.'s mental-health issues. Indeed, Jessica Singletarry testified that A.J. had a chronic history of running away from home and that A.J. was diagnosed with bipolar disorder and major depression. Singletarry also mentioned that A.J. "was very incoherent at times" and would "kind of say things that didn't make sense." A.J. admitted that she had cut herself and that she had been hospitalized for mental-health issues in the past. A.J.'s foster mom noted that A.J. has a lot of emotional problems for which she is seeing a therapist and a psychiatrist and taking medication. Kristi Skaines, a forensic interviewer for the Advocacy Center for Crime Victims and Children, testified that A.J. told her that she was bipolar and schizophrenic and that she took medication for her mental-health issues. Lori Wilson, an investigator and supervisor for child protective services, stated that A.J. had been hospitalized at the Green Oaks State Hospital, a psychiatric hospital, just before the alleged incidents occurred.

Debbie Trower, a social-service worker for The Bair foundation, testified that she has been A.J.'s social worker for two years and that A.J. is "a really troubled girl." Trower further testified that A.J. would cut herself on her arm where it could be seen and that her behaviors had escalated to the point that she needed to be sent to a residential-treatment center. Trower recounted that a residential-treatment center "is a place where we sent kids that are showing aggressive behaviors or they're harming themselves or they're trying to attempt suicide or things like that, and it's a facility to where it's—it's locked down." A.J. remained at the residential-treatment center for seven months. Trower denied that A.J. has been suicidal, but she did state that A.J. can

get verbally and physically aggressive when she is not taking her medications. On cross-examination, Trower acknowledged that A.J. had multiple hospitalizations for mental-health issues. Vicky Dickson, A.J.'s child protective services caseworker, recounted A.J.'s extensive mental-health history, including hospitalizations at the Hickory Trails Psychiatric Hospital and a residential-treatment center called New Life in Canyon Lake, Texas. Morgan Jackson, a licensed professional counselor, also spoke about A.J.'s mental-health issues.

Clearly, the record contains ample evidence documenting A.J.'s mental-health issues. The admission of A.J.'s medical records would arguably be cumulative of the testimony listed above and, thus, warrant exclusion under Texas Rule of Evidence 403. *See* TEX. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."). Given that we uphold the trial court's evidentiary ruling if it was correct on any theory of law applicable to the case, *see De La Paz*, 279 S.W.3d at 344, even if appellant had adequately briefed the issue, we could not conclude that the trial court abused its discretion by excluding A.J.'s medical records from Green Oaks State Hospital. *See Martinez*, 327 S.W.3d at 736; *see also Taylor*, 268 S.W.3d at 579. As such, we overrule appellant's second issue.

## IV. DEFINITION OF "REASONABLE DOUBT"

In his third issue, appellant contends that the trial court erred by not instructing the jury on the definition of "reasonable doubt."

In *Paulson v. State*, the Court of Criminal Appeals stated that "the Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." 28 S.W.3d 570, 573 (Tex. Crim. App. 2000) (citing *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S. Ct. 1239, 1243, 127 L. Ed. 2d 583 (1994)). The *Paulson* Court further noted:

> Citing *Jackson v. Virginia*, the Court concluded, indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. It is ill-advised for us to require trial courts to provide the jury with a redundant, confusing, and logically-flawed definition when the Constitution does not require it, no Texas statute mandates it, and over a hundred years of pre-*Geesa* Texas precedent discourages it.
>
> We specifically overrule that portion of *Geesa* which requires trial courts to instruct juries on the definition of beyond a reasonable doubt. We also overrule *Reyes*. We find that the better practice is to give no definition of reasonable doubt at all to the jury.

*Id.* (internal quotations & footnotes omitted). The Court of Criminal Appeals reiterated this holding in *Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010).

Appellant has not cited any authority specifically holding that it is error for the trial court to not provide a definition of reasonable doubt; instead, he relies heavily on Justice Ginsberg's concurrence in *Victor*. *See* 511 U.S. at 23-28, 114 S. Ct. at 1252-54. Furthermore, appellant does not cite authority demonstrating that *Victor*, *Paulson*, and *Mays* are no longer good law. Therefore, because the aforementioned cases are binding on this Court, we reject appellant's assertion that the trial court erred in failing to

provide the jury with a specific definition of reasonable doubt.[3] *See Victor*, 511 U.S. at 5, 114 S. Ct. at 1243; *Mays*, 318 S.W.3d at 389; *Paulson*, 28 S.W.3d at 573; *see also Casarez v. State*, 913 S.W.3d 468, 475 n.10 (Tex. Crim. App. 1994) ("As judges on this honorable Court, we are bound to apply the United States Constitution as interpreted by the Supreme Court; we do not have the luxury or the liberty to ignore binding precedent."); *McKinney v. State*, 177 S.W.3d 186, 192 (Tex. App.—Houston [1st Dist.] 2005), *aff'd*, 207 S.W.3d 366 (Tex. Crim. App. 2006) (stating that an intermediate appellate court must follow binding precedent of the Court of Criminal Appeals). We overrule appellant's third issue.

## V. SUFFICIENCY OF THE EVIDENCE

In his fourth issue, appellant argues that the evidence supporting his convictions is insufficient. We disagree.

## A. Applicable Law

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443

---

[3] The court's charge instructed the jury on the necessity that appellant's guilt be proved beyond a reasonable doubt. *See Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim. App. 2000).

U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

To satisfy the elements of sexual assault of a child in this case, the State was required to prove that appellant intentionally or knowingly penetrated the sexual organ of A.J., a child under seventeen at the time of the incidents, with his sexual organ. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A).

**B.      Discussion**

Ordinarily, the testimony of a child victim is sufficient to support a conviction for sexual assault. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West Supp. 2013); *Perez v. State*, 113 S.W.3d 819, 838 (Tex. App.—Austin 2003, pet. ref'd), *overruled in part on other grounds by Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008); *Karnes v. State*, 873 S.W.2d 92, 96 (Tex. App.—Dallas 1994, no pet.); *see also Dale v. State*, Nos. 10-11-00380-CR, 10-11-00381-CR, 2012 Tex. App. LEXIS 3127, at **24-25 (Tex. App.—Waco Apr. 18, 2012, pet. ref'd) (mem. op., not designated for publication). Further, courts give wide latitude to the testimony given by child victims of sexual abuse. *See Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990) (en banc). "The victim's description of what happened to [her] need not be precise, and [she] is not expected to express [herself] at the same level of sophistication as an adult." *Ozuna v. State*, 199 S.W.3d 601, 606 (Tex. App.—Corpus Christi 2006, no pet.) (citing *Villalon*, 791 S.W.2d at 134).

Testimony at trial established that A.J. was fourteen years old when the incidents occurred. A.J. recalled that she would occasionally go to appellant's apartment to help him babysit his daughter. A.J. testified that because appellant's apartment was close to her school, she would stay the night at appellant's apartment and walk to school the next day. According to A.J., in May 2009, appellant gave her alcohol, and after

appellant's daughter went to sleep, appellant got on top of A.J. while she was lying on the couch. Thereafter, appellant began "undoing" A.J.'s belt buckle and eventually took off A.J.'s pants and pulled her panties to her ankles. A.J. recounted that appellant subsequently took off his shorts. A.J. testified that appellant initially put his fingers in her vagina "to make it loose." After about a minute of doing this, appellant put his penis inside A.J.'s vagina and began "moving up and down." Appellant stopped when he noticed that A.J. was bleeding. A.J. then put on a pad, pulled up her pants and panties, and went to sleep. She went to school the next day. After school, A.J. returned to appellant's apartment to help take care of his daughter. A.J. testified that appellant had sex with her again.

In any event, appellant contends that the evidence is insufficient to support his convictions because A.J. made prior allegations against other family members, and because A.J.'s testimony at trial was inconsistent and differed from her prior statements. The record reflects that, on cross-examination, A.J. was unable to recall the second instance of sexual assault and testified that no sex occurred on the second day; however, when questioned on re-direct, A.J. testified that the answers she gave on cross-examination were based upon what she remembered at the time of trial and not what she had written in her statement given to police, wherein she alleged a second sexual encounter. She later testified on re-direct that she had sex with appellant on two occasions. Several other witnesses testified that A.J.'s outcry about the two instances of sex with appellant remained consistent and that she never recanted these allegations.

With regard to this evidence, we note that it is within the province of the factfinder, the jury here, to judge the credibility of the witnesses. *See Chambers*, 805 S.W.2d at 461. This means that the jury was entitled to believe all, some, or none of the testimony presented by the parties. *See id.* And because it is within the province of the jury, we are to defer to the jury's resolution of conflicts in the evidence. *See Jackson*, 443 U.S. at 329, 99 S. Ct. at 2792-93; *see also Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge."). With its guilty verdict, the jury resolved any conflicts in A.J.'s testimony and prior statements in favor of the prosecution. Therefore, based on the foregoing case law, and given the wide latitude given to the testimony of child victims of sexual abuse, we defer to the jury's resolution of the facts. *See Jackson*, 443 U.S. at 329, 99 S. Ct. at 2792-93; *see also Lancon*, 253 S.W.3d at 706; *Chambers*, 805 S.W.2d at 461; *Render*, 316 S.W.3d at 859.

With regard to appellant's contention regarding A.J.'s purported prior allegations against other family members, the record shows that appellant offered no evidence to show that any of the allegations against her father or her cousin Tommy were false. *See* TEX. R. EVID. 608(b); *Hammer*, 296 S.W.3d at 562-65; *Lopez*, 18 S.W.3d at 226. Thus, as mentioned earlier, appellant was prevented from asking A.J. about those accusations. *See* TEX. R. EVID. 608(b); *Hammer*, 296 S.W.3d at 562-65; *Lopez*, 18 S.W.3d at 226. And to the degree that A.J.'s prior allegations of sexual abuse are relevant, we once

again note that this amounts to a conflict in the evidence that was within the province of the jury to resolve. *See Jackson*, 443 U.S. at 329, 99 S. Ct. at 2972-93; *see also Lancon*, 253 S.W.3d at 706; *Chambers*, 805 S.W.2d at 461; *Render*, 316 S.W.3d at 859.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a rational juror could have concluded that appellant intentionally or knowingly caused the penetration of A.J.'s vagina with his penis on two different occasions, as alleged in the indictment, and that A.J. was fourteen years old at the time of the incidents. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A); *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Hooper*, 214 S.W.3d at 13. Accordingly, we hold that the evidence is sufficient to support appellant's convictions for sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A); *see also Jackson*, 443 U.S. at 318-19, 99 S. Ct. at 2788-89; *Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. We overrule appellant's fourth issue.

## VI. CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgments of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
    Justice Davis, and
    Justice Scoggins
Affirmed
Opinion delivered and filed May 8, 2014
[CRPM]