

# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00268-CR

**SAMMY LEE SMITH, JR.,**

**Appellant**

 **v.**

**THE STATE OF TEXAS,**

**Appellee**

## From the County Court at Law No. 2
## McLennan County, Texas
## Trial Court No. 2014-0616-CR2

## MEMORANDUM OPINION

In three issues, appellant, Sammy Lee Smith Jr., challenges his conviction for

making a terroristic threat. *See* TEX. PENAL CODE ANN. § 22.07 (West 2011). Specifically,

appellant asserts that: (1) the trial court erroneously defined the term "intentionally" in

the jury charge; (2) the State engaged in purposeful discrimination in its exercise of a

peremptory challenge against a juror; and (3) the evidence supporting his conviction is insufficient. Because we overrule all of appellant's issues on appeal, we affirm.[1]

I.     APPELLANT'S *BATSON* CHALLENGE

In his second issue, appellant argues that the trial court's ruling on his *Batson* challenge was clearly erroneous because the record demonstrates that the State's race-neutral explanation for exercising a peremptory strike on Juror Number 2 is inaccurate and insufficient. *See generally Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 69 (1986).

## A. Applicable Law

In *Batson*, the United States Supreme Court held that, while a prosecutor ordinarily may exercise peremptory strikes for any reason related to his views concerning the outcome of the trial, "the Equal Protection Clause forbids the prosecutor to challenge potential jurors on account of their race." 476 U.S. at 89, 106 S. Ct. at 1719. A *Batson* challenge to a peremptory strike consists of three steps: (1) the opponent of the strike must establish a prima facie showing of racial discrimination; (2) the proponent of the strike must articulate a race-neutral explanation; and (3) the trial court must decide whether the opponent has proved purposeful racial discrimination. *See Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S. Ct. 1769, 1770-71, 131 L. Ed. 2d (1995); *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009).

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those facts that are necessary to the disposition of the case. *See* TEX. R. APP. P. 47.1, 47.4.

Once the State proffers race-neutral explanations for its peremptory strikes, the burden is on the defendant to convince the trial court that the prosecution's reasons were not race-neutral. *Ford v. State*, 1 S.W.3d 691, 693 (Tex. Crim. App. 1999). Thus, the burden of production shifts from the defendant in step one to the State in step two; but the burden of persuasion never shifts from the defendant. *Id.* The trial court's ruling in the third step must be sustained on appeal unless it is clearly erroneous. *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010) (citing *Snyder v. Louisiana*, 552 U.S. 472, 477, 128 S. Ct. 1203, 1207-08, 170 L. Ed. 2d 175 (2008)). "Because the trial court's ruling requires an evaluation of the credibility and demeanor of prosecutors and venire members, and because this evaluation lies peculiarly within the trial court's province, we defer to the trial court in the absence of exceptional circumstances." *Id.*; *see Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008) ("[A] reviewing court should examine the trial court's conclusion that a facially race-neutral explanation for a peremptory challenge is genuine, rather than a pretext, with great deference, reversing only when the conclusion is, in the view of the record as a whole, clearly erroneous.").

B. **Discussion**

At trial, appellant, an African-American, informed the trial court that the State had struck the only two African-American jurors in the strike zone. *See Godine v. State*, 874 S.W.2d 197, 203 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (stating that the defendant made a prima facie showing of a *Batson* violation by showing that the juror whom the State peremptorily struck was an African-American, like the defendant). However, on appeal, appellant only complains about the trial court's ruling on his *Batson*

challenge as to Juror Number 2. Nevertheless, appellant made a prima facie showing that the prosecutor's strike may have been racially motivated. *See id.*

In response to appellant's challenge, the State offered the following race-neutral reason for striking Juror Number 2:

> Judge, I think it's our obligation to give you, my understanding, race-neutral reasons as to why we struck these two individuals.
>
> With respect to Juror No. 2, I have a note that during [defense counsel's] voir dire, he was sleeping. So I am concerned he would not be able to pay attention and fully focus on the trial.

Defense counsel argued: "With respect to Reverend Watson [Juror Number 2], I do not recall that he slept at all during the voir dire. He was very alert and involved in the process, and I disagree with their characterization." The prosecution then asserted:

> Both Ms. Avery and I have independent notations that he was sleeping. I also have an initial notation, and I think it's from Ms. Avery's voir dire, where he couldn't imagine a situation—it had to do with beyond a reasonable doubt and whether or not he would be—he could imagine a situation where he knew something 100 percent. It was early on in Ms. Avery's voir dire. Again, after some cajoling and questioning, he was, I think, able to come around that he would understand that in that situation he would be a witness so he would be called to testify and not be called to judge.
>
> Generally speaking, it's my concern, with him being a pastor, that he's going to be more of a sympathetic person, more likely to give somebody a second chance. I think that his occupation plays a huge role into whether or not he could be [a] fair and impartial juror in this case.

Defense counsel responded that "those are not valid bases, and we reurge our objection." Thereafter, the trial court overruled appellant's *Batson* challenge.

Based on the foregoing, we do not believe that appellant refuted the prosecution's explanation or demonstrated that the State's explanation was merely a pretext for

discrimination. *See Williams v. State*, 301 S.W.3d 675, 688 (Tex. Crim. App. 2009); *Ford*, 1 S.W.3d at 693. With respect to the prosecution's assertion that Juror Number 2 was sleeping during voir dire, we must give great deference to the trial court's resolution of this dispute because it was in the best position to evaluate the credibility and demeanor of Juror Number 2, as well as the prosecutors and defense counsel. *See Leadon v. State*, 332 S.W.3d 600, 611 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ("Appellate courts must give great deference to credibility and demeanor determinations made by the trial court in connection with a *Batson* inquiry. . . . We may not substitute our opinion for the trial court's factual assessment of the neutrality of the prosecutor's explanation for exercising strikes." (citations omitted)); *see also Grant*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010); *Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008). Without more, appellant's disagreement with the State's observation about Juror Number 2 sleeping is not enough to demonstrate that the State's explanation was merely a pretext for discrimination. *See Grant*, 325 S.W.3d at 657; *see also Watkins*, 245 S.W.3d at 448.

Furthermore, several Texas courts have held that a prospective juror sleeping during voir dire is a sufficient race-neutral reason for the exercise of a peremptory strike. *See Tiede v. State*, 104 S.W.3d 552, 559-60 (Tex. App.—Tyler 2000), *vacated on other grounds*, 76 S.W.3d 13 (Tex. Crim. App. 2002); *Lamons v. State*, 938 S.W.2d 774, 778 (Tex. App.—Houston [14th Dist.] pet. ref'd) (holding that a prospective juror's sleeping during portions of voir dire was alone sufficient to justify a peremptory challenge); *Irvine v. State*, 857 S.W.2d 920, 926 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd); *Ivatury v. State*, 792 S.W.2d 845, 848 (Tex. App.—Dallas 1990, pet. ref'd) ("In the instant case, the State struck

juror 16 after it observed her dozing off and the court corroborated the State's observation. This was a sufficient racially neutrally [sic] explanation."). Additionally, the occupation of a venire member may serve as a race-neutral reason for the use of a peremptory strike. *See Leadon*, 332 S.W.3d at 613 (noting that a strike based on a person's occupation is race-neutral) (citing *Moore v. State*, 265 S.W.3d 73, 78 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding that striking a postal worker on the basis of occupation was race-neutral)); *see also Godine*, 874 S.W.2d at 205 ("Also, the occupation of a venireperson is a legitimate race-neutral reason for striking a perspective [sic] juror." (citing *Tompkins v. State*, 774 S.W.2d 195, 205 (Tex. Crim. App. 1987); *Barnes v. State*, 855 S.W.2d 173, 174 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd))).

Therefore, according great deference to the trial court's denial of appellant's *Batson* challenge as to Juror Number 2, we cannot say that, based on our review of the record, the trial court's ruling is clearly erroneous. *See Snyder*, 552 U.S. at 477, 128 S. Ct. at 1207-08; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 448; *see also Landrum v. State*, No. 10-13-00281-CR, 2014 Tex. App. LEXIS 10194, at *4 (Tex. App.—Waco Sept. 11, 2014, pet. ref'd) (mem. op., not designated for publication). We overrule appellant's second issue.

## II. EVIDENTIARY SUFFICIENCY

In his third issue, appellant argues that the evidence supporting his conviction is insufficient.

**A.     Standard of Review**

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or

none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

## B. Discussion

A person commits the offense of terroristic threat if he threatens to commit an offense involving violence to any person or property with intent to place that person in fear of imminent serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.07(a)(2). In *Walker v. State*, the Fort Worth Court of Appeals stated:

> "Therefore, in order to commit this offense [terroristic threat], the accused must have the specific intent to place any person in fear of imminent serious bodily injury. . . . Intent can be inferred from the acts, words, and conduct of the accused. However, the accused's intent cannot be determined merely from what the victim thought at the time of the offense. Indeed, for this offense to be complete it is not necessary that the victim or anyone else was actually placed in fear of imminent serious bodily injury. Additionally, it is immaterial to the offense whether the accused had the capability or the intention to carry out his threat. All that is necessary to complete the offense is that the accused by his threat sought as a desired reaction to place a person in fear of imminent serious bodily injury."

327 S.W.3d 790, 794 (Tex. App.—Fort Worth 2010, no pet.) (quoting *Dues v. State*, 634 S.W.2d 304, 305-06 (Tex. Crim. App. 1982) (internal citations omitted)).

Darrell Allen, the chief of police for Marlin, Texas, worked security for Club Crush, an after-hours club in Waco, Texas, on the night in question. Chief Allen observed appellant and another individual arguing with Randy Gober, the owner of the club. Chief Allen testified that he told appellant and the other individual that they had to leave or go inside the club. At this point, Chief Allen recalled that appellant told him to: "Get your bitch-ass out of here. You're no real cop, Nigger." Chief Allen noted that appellant "kept on in that type of language towards me" and that appellant was "very disrespectful, very insolent, wouldn't cooperate." Chief Allen told appellant to leave approximately twelve times, but appellant refused and got angrier.

According to Chief Allen, appellant then "stated that he was going to find me on Facebook and fuck me up. That he stated that he was a security guard and he had—he was going to put his gun in my face" after being told to leave for the twelfth time. Upon hearing a police siren, Chief Allen told appellant to get inside his car. Once inside, appellant "still uttered remarks saying he was going to find me, going to fuck me up." Chief Allen also testified that he observed appellant make furtive gestures while inside the car, "like he was looking for something" and that appellant's passenger kept saying he is from the hood and "Nigger, what's up?"[2] Chief Allen noted that he believed appellant was looking for a gun while inside the car and that an act of violence causing serious bodily injury was imminent. At this time, Chief Allen drew his service weapon, told appellant to get out of the car, and informed appellant that he was under arrest. At

---

[2] A subsequent search of appellant's vehicle found no firearms.

trial, Chief Allen could not recall appellant saying anything about "double-dipping," but he did correctly remember that appellant was driving a Sebring on the night in question.

Sergeant Jason Lundquist of the Waco Police Department arrived at the scene to see Chief Allen with his service weapon drawn. Sergeant Lundquist detained appellant and checked him for weapons. No weapons were found, and appellant told Sergeant Lundquist that "he didn't think that they were police officers because they were just working security for the club and they couldn't do that." After speaking with appellant, Sergeant Lunquist turned appellant over to Officer Lyle Smith of the Waco Police Department. Appellant told Officer Smith that he was told to leave but merely asked why.

Brandon Stanford, appellant's cousin, testified that appellant never threatened to pull a gun on Chief Allen and that he never threatened to look him up on Facebook. Additionally, Trecienda Moore, appellant's girlfriend, stated that she was in the car behind appellant and that she only heard him say the word "dip." Moore thought appellant was saying something about "flipping and dipping." Moore denied hearing appellant threaten Chief Allen. Appellant also testified on his own behalf, wherein he denied making any threat to Chief Allen and stating that he was a security guard.

As noted earlier, it is within the province of the jury to resolve conflicts in the evidence, and we are to defer to the jury's resolution of those conflicts. *See Chambers*, 805 S.W.2d at 461; *see also Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.— Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision

regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge."). In convicting appellant of the charged offense, the jury clearly believed Chief Allen's version of the events and did not believe appellant or his witnesses regarding what transpired that evening; as such, we must defer to the jury's resolution of the conflict in the evidence.[3] *See Chambers*, 805 S.W.2d at 461; *see also Jackson*, 443 U.S. at 326, 99 S. Ct. at 2792-93; *Lancon*, 253 S.W.3d at 706; *Render*, 316 S.W.3d at 859.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational factfinder could have concluded that the State proved beyond a reasonable doubt that appellant committed the offense of making a terroristic threat by threatening violence with intent to place Chief Allen in fear of imminent serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.07; *see also Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. We therefore hold that the evidence is sufficient to support appellant's conviction. *See* TEX. PENAL CODE ANN. § 22.07; *see also Lucio*, 351 S.W.3d at 894; *Hooper*, 214 S.W.3d at 13. Accordingly, we overrule appellant's third issue.

---

[3] Appellant also appears to argue that the evidence supporting his conviction is insufficient because Chief Allen could not remember some of the details of the incident, and because Chief Allen's employment history (i.e., the fact that Chief Allen moonlighted as a security guard at Club Crush to earn more money) supported the defensive theory that he overreacted when appellant made a disrespectful and sarcastic remark about Chief Allen "double-dipping." Appellant's argument essentially attacks the credibility of Chief Allen. Once again, we note that it is within the province of the jury to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Furthermore, we are to defer to the jury's resolution of conflicts in the evidence. *See id.*; *see also Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd). As such, we are not persuaded by appellant's sufficiency argument.

### III. THE JURY CHARGE

In his first issue, appellant asserts that the trial court erroneously included an untailored definition of "intentionally" in the jury charge. Specifically, appellant contends that making a terroristic threat is a conduct-oriented offense and that the definition of the term "intentionally" in the jury charge should be tailored to focus on the nature of his conduct, rather than the result of his conduct.

### A. Applicable Law

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

### B. Discussion

Here, the abstract portion of the jury charge pertaining to making a terroristic threat provided the following definition for "intentionally": "A person acts intentionally,

or with intent, with respect to the nature of his conduct or a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." Appellant argues that this definition did not properly tailor the definition of "intentionally" to focus on the nature of his conduct, rather than the result of his conduct.

Under *Almanza*, the level of harm necessary for reversal depends on whether the defendant timely and specifically objected to the jury charge. *See Almanza*, 686 S.W.2d at 171. Because appellant properly objected in the trial court to the definition of "intentionally" included in the jury charge, reversal is required if there was just "some harm." *Id.*

To determine harm, we weigh the following factors: (1) the jury charge as a whole; (2) the arguments of counsel; (3) the entirety of the evidence; and (4) any other relevant factors present in the record. *See Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim. App. 2008). Even though the "some harm" standard is a low threshold, it nonetheless requires the reviewing court to find actual harm, rather than just theoretical harm. *Id.* Neither party bears the burden on appeal to prove harm or harmlessness. *Id.* at 462.

### 1. The Jury Charge as a Whole

The application portion of the jury charge pertaining to making a terroristic threat provided:

> Now, if you find from the evidence beyond a reasonable doubt that on or about June 16, 2013, in McLennan County, Texas, the Defendant, SAMMY LEE SMITH, JR., then and there threatened to commit an offense involving violence to a person, namely aggravated assault with a deadly weapon, with intent to place Darrell Allen in fear of imminent serious bodily injury, as charged in the Information, you will find the Defendant "Guilty." Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt

thereof, you will acquit the Defendant and say by your verdict "Not Guilty."

The language contained in the application portion of the jury charge pertaining to making a terroristic threat substantially tracks the language of section 22.07(a)(2) of the Penal Code, which is the operative statute in this case., and effectively restricts the jury's deliberations to the allegations in the indictment. *See* TEX. PENAL CODE ANN. § 22.07(a)(2) ("A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to . . . place any person in fear of imminent serious bodily injury . . . ."); *Plata v. State*, 926 S.W.2d 300, 302-03 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) (holding that the inclusion of merely superfluous abstraction never produces reversible error in the court's charge because it has no effect on the jury's ability to implement fairly and accurately the commands of the application paragraph or paragraphs); *Grady v. State*, 614 S.W.2d 830, 831 (Tex. Crim. App. 1981) ("[T]his Court held that abstract statements of the law that go beyond the allegations in the indictment will not present reversible error when the court's application of the law to the facts effectively restricts the jury's deliberations to the allegations in the indictment."(citing *Toler v. State*, 546 S.W.2d 290, 293-94 (Tex. Crim. App. 1977))); *see also Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994) ("A jury charge which tracks the language of a particular statute is a proper charge on a statutory issue."). Accordingly, we cannot say that this factor weighs in favor of finding "some harm." *See Warner*, 245 S.W.3d at 461. We now turn to the other factors to determine whether the purported error might have prejudiced the jury's consideration of the evidence or

substantially affected their deliberations. *See Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003).

### 2. Closing Arguments

Appellant's main defensive theory was that he did not make a terroristic threat at all. In fact, he did not contest the element of mental culpability at trial, though that is the basis of his complaint in this issue. "Where no defense is presented which would directly affect an assessment of mental culpability, there is no harm in submitting erroneous definitions of 'intentionally' and 'knowingly.'" *Saldivar v. State*, 783 S.W.2d 265, 268 (Tex. App.—Corpus Christi 1989, no pet.) (citing *Adams v. State*, 744 S.W.2d 622, 628-29 (Tex. App.—Fort Worth 1987, pet. ref'd); *Mena v. State*, 749 S.W.2d 639, 642 (Tex. App.—San Antonio 1988, pet. ref'd)); *see Reed v. State*, 421 S.W.3d 24, 30 (Tex. App.—Waco 2013, pet. ref'd). We therefore conclude that this factor does not weigh in favor of finding "some harm." *See Warner*, 245 S.W.3d at 461.

### 3. The Entirety of the Evidence

As detailed earlier, the record contains ample evidence indicating that appellant made a terroristic threat to Chief Allen. Moreover, we have concluded that the evidence supporting appellant's conviction is sufficient. As such, we cannot say that this factor weighs in favor of finding "some harm." *See id.*

### 4. Other Relevant Factors Present in the Record

Other than repeating arguments made under the aforementioned factors of this analysis, appellant does not direct us to any other compelling or relevant factors present

in the record.  Once again, we cannot say that this factor weighs in favor of finding "some harm."  *See id.*

### 5.    Summary

Based on the foregoing, we conclude that any error in defining the term "intentionally" in the jury charge was harmless.  *See Almanza*, 686 S.W.2d at 171.  We overrule appellant's first issue.

### IV.    CONCLUSION

Having overruled all of appellant's issues on appeal, we affirm the judgment of the trial court.


                                        AL SCOGGINS
                                        Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed November 5, 2015
Do not publish
[CR25]

